WILLIAM JONES, An Infant, By FRANK J. JONES, His Next Friend, v. ST. LOUIS-SAN FRANCISCO RAILWAY COMPANY, Appellant.

Division Two, March 19, 1921.

1. **INSTRUCTION: Credibility of Witness: Statements Contradictory of Testimony: Comment.** It is not error to refuse an instruction telling the jury that if they find and believe that plaintiff has made statements out of court "contrary to and at variance with his testimony" they "may take this fact into consideration in determining what weight and credibility" they will give to the plaintiff's testimony. Such an instruction is a comment on plaintiff's evidence, and should not be given. The general instruction respecting the credibility of witnesses is sufficient.

2. **EXCESSIVE VERDICT: Passion and Prejudice: Reversal.** Where plaintiff's evidence upon the merits of the controversy is substantial and no error was committed against defendant during the progress of the trial, a verdict for a reasonable amount will be upheld on appeal. But if the verdict, in the light of all the facts, appears to have resulted either from passion or prejudice on the part of the jury, the judgment will be reversed, and the cause remanded for a new trial.

3. ——: ——: ——: **Contradictory Testimony.** Where plaintiff was a trespasser upon defendant's moving freight train, and testified that as he attempted to climb up the iron ladder of a car a brakeman on the top of the car struck him with an axe-handle, knocked him off, he fell on sandy ground which sloped towards the track, he rolled towards the track and the car wheels cut off his foot, and five witnesses testified that he told them on the day of the accident that he got on a car which was two or three cars ahead of the car which one of his companions had boarded, that he wanted to get off and get back to the car where such companion was, and that, in doing so, he fell off of the car and got his foot cut off, and these witnesses were either guilty of wilful perjury in so testifying, or plaintiff was guilty of perjury in denying that he made such statements to them; and where the conductor of the train and a brakeman testified that both brakemen were in the caboose at the time of the accident, and no brakeman was on the top of any car; and where the evidence is overwhelmingly against plaintiff as to the manner in which he

Jones v. Frisco Railway Co.

claims to have been injured, and the jury, nevertheless, ignored it and returned a verdict for $15,000, which was $2500 more than the trial court ruled was reasonable compensation, and which the Supreme Court considers was excessive, at least to the extent of $5,000, if no error had been committed during the progress of the trial, it will be ruled that the verdict was the result of passion or prejudice on the part of the jury, and that justice requires that the judgment be reversed, and the cause remanded for a new trial.

4. **INSTRUCTION: Affidavit for Continuance.** Where defendant filed its application for a continuance, based on the absence of a witness, and set up therein the facts such witness would testify if he were present, which were substantial and material to the issues, and plaintiff agreed that if such witness were present he would testify to those facts, the defendant is entitled to an instruction telling the jury that the evidence of such absent witness, as contained in said affidavit and read to them, is entitled to and should be given the same weight and credit they would give it if said witness were personally present and testified to the same facts.

5. **BRAKEMEN: Authority to Eject Trespassers.** In this case there was sufficient evidence to enable the jury to determine whether or not the brakemen on defendant's moving freight train were authorized, while acting in the line of their duty, to eject trespassers from the train.

6. **INSTRUCTIONS: Measure of Damages: Misleading.** If defendant is fearful that a given instruction on the measure of damages, of itself unobjectionable, may in some way mislead the jury, it is defendant's duty to ask for an instruction declaratory of the law from its viewpoint.

Appeal from St. Louis City Circuit Court.—*Hon. Frank Landwehr,* Judge.

REVERSED AND REMANDED.

*W. F. Evans, E. T. Miller* and *A. P. Stewart* for appellant.

(1) The demurrer to the evidence should have been sustained, and the peremptory instruction requested at the close of the whole case should have been given. (a)

287 Mo.—5

Plaintiff's evidence as to the manner in which he received his injuries is beyond belief and does not comport with either physical facts or laws. (b) The testimony of plaintiff's witnesses, Warmack and Cooper, that it was the duty of brakemen on defendant's freight trains to expel trespassers therefrom was based on their conclusions, and hence was incompetent and cannot support the verdict. Kane v. Railway, 251 Mo. 44; Davidson v. Railway, 207 S. W. 277. The remaining evidence was not sufficient to show that the duties of defendant's brakemen included the ejection of trespassers from freight trains. ·This will not be presumed, but the authority of a brakeman in that behalf must be established *aliunde* the mere fact that he is a brakeman. Farber v. Railway, 116 Mo. 93; Krueger v. Railway, 84 Mo. App. 366; Marcum v. Railway, 139 Mo. App. 220. (c) Even if plaintiff's evidence could be said to be sufficient to raise a presumption that it was the duty of brakemen on defendant's freight trains to expel trespassers, and thus make out a prima-facie case, yet this presumption was overcome by positive evidence to the contrary, and since plaintiff then produced no positive testimony to disprove defendant's positive testimony, his prima-facie case falls. Guthrie v. Holmes, 217 Mo. 233. (2) Plaintiff's instruction on the measure of damages is erroneous. This instruction did not confine the jury to a consideration of the evidence in assessing the damages, but was a roving commission to the jury to assess the damages at such sum as, in their opinion, would fairly compensate plaintiff, without any regard whatever to the evidence. This error was not cured by any instruction given at the request of defendant. Ganz v. Railway, 220 S. W. (Mo.) 497. (3) The court erred in refusing to give defendant's requested instruction "C." Under the statute the facts set forth in an affidavit for a continuance shall, if the opposite party admits that the absent witness would, if present, swear to such facts, be read as the evidence of such witness. To give the moving party the benefit of such evidence which the statute bestows, the court should instruct the jury that such evidence is en-

titled to the same weight and credit they would give it if the witness were personally present and testified to the same facts before them. Sec. 1960, R. S. 1909. (4) The verdict was grossly excessive, and clearly the result of prejudice and passion on the part of the jury, and notwithstanding the *remittitur* forced by the court *nisi,* the judgment is still excessive. Chitty v. Transit Co., 166 Mo. 443; Stolze v. Transit Co., 188 Mo. 590; Nicholds v. Glass Co., 126 Mo. 68; O'Connell v. Railway, 106 Mo. 485; Brady v. Railroad, 206 Mo. 540; Johnson v. Coal Co., 205 S. W. 619; Newcomb v. Railroad, 182 Mo. 726; Lessenden v. Railroad, 238 Mo. 265; Greenwell v. Railway, 222 S. W. 410.


*Earl M. Pirkey* and *Arthur Stahl* for respondent.


(1) Appellant cannot complain of alleged error in respondent's instruction where he gives or requests an instruction containing the same thing. Smart v. Kansas City, 208 Mo. 204; Williams v. Elec. Co., 274 Mo. 14. (2) Testimony that brakemen customarily put off persons who were not entitled to be transported on freight trains, and this was done over a long period of time, will establish the brakeman's authority to eject persons who have no right to ride. Markham v. Railroad, 139 Mo. App. 220. (3) To show the authority of a brakeman to eject trespassers it is competent for a brakeman or conductor to testify what the duties of a brakeman are. Farber v. Mo. Pac. Ry. Co., 139 Mo. 279. (4) Defendant is liable for the acts of its brakeman if what he did was within the scope of the brakeman's employment. Droelshagen v. Railroad, 186 Mo. 266. (5) It is also said that defendant is liable for the acts of its employee "when done in the course of his employment." Farber v. Mo. Pac. Ry. Co., 116 Mo. 92; Gardner v. St. Louis Screw Co., 201 Mo. App. 358; Whiteaker v. Railroad, 252 Mo. 458. (6) The omission from an instruction of the cautionary requirement to find from the evidence or weight of the evidence is not reversible error. Ullrich v. Ry. Co., 220 S. W. 686; Zack-

wick v. Fire Ins. Co., 225 S. W. 139; Cody v. Gremmer, 121 Mo. App. 359; Compressed Air Co. v. Fulton, 166 Mo. App. 28; Logan v. Field, 192 Mo. 69; Strode v. Conkey, 106 Mo. App. 15; Rogers & Powers v. Warren, 75 Mo. App. 275; Baker v. Ry. Co., 52 Mo. App. 606. (7) It is improper to single out a witness and comment on a part of his evidence; for this reason the court properly refused appellant's instruction B. Landrum v. Railway, 132 Mo. App. 721; Huff v. Ry. Co., 213 Mo. 514; Quinn v. Railway, 218 Mo. 555; Zander v. Transit Co., 206 Mo. 461.

RAILEY, C.—This action was commenced in the Circuit Court of the City of St. Louis, on August 20, 1917. The case was tried on the second amended petition, which states in substance, that plaintiff was a minor between twelve and fifteen years of age; that Frank J. Jones was appointed his next friend, qualified as such, and prosecutes this action in that behalf; that defendant is a railroad corporation and, in July, 1917, operated a line of railroad from Starland, in Perry County, Missouri, to St. Louis, in said State; that on or about July 17, 1917, at or near Crystal City, Missouri, plaintiff boarded one of defendant's freight trains on said road, bound for St. Louis; that while on said train, and while it was in rapid motion, one of defendant's servants in charge of said train did willfully, intentonally, wrongfully and maliciously threaten to strike plaintiff, and did strike him, whereby he was caused to fall from said train while it was in rapid motion, and one or more wheels of said train ran over, crushed, lacerated, tore and bruised plaintiff's left foot, so that the front half thereof had to be, and was amputated; that plaintiff's head, limbs and body were bruised; that his back was lacerated, torn and brused, and plaintiff sustained a great nervous shock. "That said acts of said servant in charge of said freight train were within the scope of his employment and authority under defendant, and were done while he was undertaking to serve defendant pursuant to his said employment and while he was in

the course of his employment under defendant; that by his injuries so sustained, plaintiff has suffered,'' etc. The petition concludes with a prayer for $20,000 actual damages and $10,000 punitive damages.

The answer is a general denial.

It appears from the evidence that plaintiff, who was about fourteen years of age, and two companions, Edward and William Hawver, about fifteen and thirteen years of age respectively, on July 17, 1917, were in Crystal City aforesaid, and were desirous of returning to St. Louis, Missouri, where they lived; that about 300 or 400 feet north of defendant's depot at Crystal City, a bridge was in course of erection over defendant's track; that about one o'clock on that day a north-bound freight train passed through Crystal City on its way to St. Louis; that plaintiff and the older Hawver boy, Edward, according to their testimony, got on this train from the west side, while it was in motion; that the younger Hawver boy did not get on the train, but ran along the side of same. Plaintiff testified, in substance, that he and his two companions were standing beside the track about fifteen feet north of the bridge when the train came along; that the train was running about fifteen or twenty miles an hour; that Edward Hawver got on the side of a car, near the engine, and plaintiff got on two cars behind him; that the smaller boy did not get on, but ran along by the side of the train; that plaintiff climbed on a box car by the iron hand-holds until he got within about two feet of the top of same; that he climbed about four or five of those steps before he was hurt. He testified "that the brakeman was on top of the car with a stick and he said, 'what are you doing there?' and he hit me with the stick, and I fell off;" that this man struck him on the left shoulder; that he did not know what the man hit him with, but it was about two feet long and looked like an axe handle; that he hit plaintiff hard, and knocked him off the train; that plaintiff fell on his back on the sand; that the latter slanted to the track; that plaintiff slipped under the train and his left foot was cut off; that the brakeman of that train struck him.

He further testified on cross-examination: "Q. How did you know that man was a brakeman on that train? A. I have saw them before."

He said the brakeman just hit him once; that he had ridden about 100 feet from where he got on the train.

Plaintiff was then taken to the office of Dr. Commerford, where his injuries were dressed.

Edward Hawver testified by deposition that "the three of us got on; we boarded the train. I was on a coal car near the middle of the train and the two other boys got on two cars back of me. I saw a brakeman on the train, and he told the boy to get off; hollered and told him to get off. The train was in motion when this was done; the freight train was running about fifteen or twenty miles an hour. I first knew that an accident had occurred when my brother hollered for me."

On cross-examination, he testified, in substance, that he did not see his brother get on the train; that the latter had gone about two or three city blocks from the bridge when plaintiff got off, and the train was going fifteen or twenty miles an hour when he got off; that the brakeman whom he saw was on top of the box-car where plaintiff was; that plaintiff was on the back end of the b that the brakeman told plaintiff to get off, but did not say anything to witness; that as soon as the brakeman said get off, plaintiff hopped off and fell; that his brother was running along the side of the train behind witness; that he was running at the side of the car Jones was on, all the time.

William Hawver testified, in substance that his brother first boarded a car, and plaintiff got on a car two cars further back; that, "I saw a brakeman holler at the Jones boy and scared him and he sort of ran backwards and fell, and cut his foot off, and I hollered up to my brother to get off the train;" that the train was going fifteen or twenty miles per hour; that plaintiff got on two cars further back than his brother; that as witness was going along the side of the freight train, he saw a brakeman hollering at Jones and trying to scare him; that he

made Jones unbalance himself, and he fell backwards; that his foot went right underneath the car, and his foot was cut off up to the center of his arch; that he saw the brakeman on top of the box car; that he had a club in his hand, and it looked like an axe handle; that he picked it up and started to hit plaintiff; that he hollered at plaintiff, the latter overbalanced himself and went off; that witness did not get on the train.

On cross-examination witness testified, that the brakeman was on top the car about the middle and kneeling down; that when the brakeman hollered, witness saw him raise a club; that he heard the brakeman tell plaintiff to get down off the car or he would hit him with the club. Witness further testified: "And with that freight train running fifteen or twenty miles an hour I was keeping up with that car, and above all the noise that train was making I could hear what the brakeman said to William Jones."

This witness further testified:

"Q. You say this brakeman had a club in his hand? A. Yes, sir.

"Q. He didn't hit William Jones, did he? A. Yes, sir—he made a break to.

"Q. What did he do? A. He held the club up and started to strike him.

"Q. Well, did he strike him? A. Yes, sir.

"Q. How long was that club? A. Two foot.

"Q. About two feet? A. Yes, sir.

"Q. How far was the brakeman from William Jones? A. You mean by feet?

"Q. Yes. A. About thirteen foot.

"Q. About thirteen feet from him. The brakeman was up on top of the box car? A. Yes, sir.

"Q. And William Jones was down on the side of the coal car? A. Yes, sir.

"Q. Did you see William Jones get off? A. He didn't get off; he fell off.

"Q. He fell off? A. Yes, sir.

"Q. Did you see him fall? A. Yes, sir.

"Q. Where were you when he fell? A. Down by the side of the box car.

"Q. By the side of the same box car you had been running along by? A. Yes, sir.

"Q. How fast was that train going when he fell off? A. Kept the same rate of speed."

John Warmack, a witness for plaintiff, testified that he worked about nine years for defendant on the line of road running from Starland to St. Louis; that he started as a brakeman, and got to be a conductor; that on through freights, defendant had two brakemen, and three brakemen on local freight trains; that he knew what the duties of a brakeman were during the above period, on freight trains running over said road. The following questions were then propounded to said witness:

"Q. What were the duties, during those times, in regard to persons; take first the case of persons, including trespassers, who are not members of the train crew and who are not passengers, and who get on the freight cars—what were the duties of a brakeman in that event?

"MR. STEWART: I desire to object to that, because it is incompetent, irrelevant and immaterial and calls for the conclusion of the witness."

This objection was overruled and an exception saved. Witness then answered, that the duties of the brakemen were to keep trespassers off the train, and to put them off if they got on.

On cross-examination this witness testified that he had been discharged from service, on account of a rear-end collision; that he sought re-employment and defendant refused to re-instate him; that the conductor is in charge of the train.

E. D. Cooper was sworn as a witness for plaintiff, and testified, in substance, that he was a brakeman on defendant's road in Oklahoma, and had passed over the line from St. Louis to Starland on passenger trains a few times. Witness was then asked to state what the duties of a brakeman were, in respect to ejecting persons from the trains who had no right to ride thereon. This was objected to

for the same reason heretofore assigned as to the testimony of Warmack on the same subject. The objection was overruled and an exception duly saved. He also testified that he had put persons off the train while he was brakeman.

Dr. Guy Simpson and plaintiff testified in respect to the latter's injuries.

The foregoing covered substantially all of plaintiff's evidence in chief. At the conclusion of same, defendant interposed a demurrer to plaintiff's evidence, which was overruled and an exception saved.

Defendant's evidence tends to show that plaintiff was taken to Crystal City to the office of Dr. James Commerford for emergency treatment. Dr. Commerford was surgeon for the Pittsburg Plate Glass Company at the above point. The above doctor testified that he dressed plaintiff's injuries on the afternoon he was hurt; that the plaintiff was conscious and talked to him about the manner in which he received said injuries. Dr. Commerford testified, in respect to this subject, as follows:

"Q. What did he tell you about the manner in which he sustained his injuries? A. Told me that he and the other boys boarded a freight train to ride to St. Louis; that he had gotten on about two cars ahead of the other boys and, wanting to get back to them, he hopped off and fell under the car.

"Q. Did he tell you that in response to your question as to the manner in which he sustained his injuries? A. Yes, sir.

"Q. Did he say anything in that conversation about the brakeman hitting him with a club and knocking him from the train? A. No, sir."

Witness said he heard plaintiff tell Mr. Hughes, the station agent of defendant, the same afternoon, just what plaintiff had told witness as to how he was injured. He testified that he was present when defendant's exhibit 1 was written by Mr. Hughes; that the latter wrote it as plaintiff dictated it; that at the time it was written, plaintiff was conscious and his mental condition perfectly clear.

On cross-examination, witness testified that plaintiff complained very little of his injury, but was worried as to what his father was going to do to him when he got him home. Witness said he did not allow the plaintiff's companions to come ino the room while he was dressing plaintiff's foot.

Geo. C. Taylor, superintendent of the Pittsburg Plate Glass Company, at Crystal City, saw plaintiff while he was being carried to Dr. Commerford's for emergency treatment. He testified, in substance, that plaintiff was conscious and told him how he received his injuries; that plaintiff told him "he got on a car ahead of the other boys and he jumped off, to get on the same car they were on, and struck a pile of sand and went under the car and got hurt. The plaintiff did not say anything in that conversation about a brakeman being on that train." Witness was shown, and identified, defendant's exhibit 1, which he signed as a witness. He said, when Hughes wrote exhibit 1, he read it over to plaintiff, and the latter signed it.

A. H. Hughes, station agent of defendant at Crystal City, testified that he talked with plaintiff the same day of accident while he was at Dr. Commerford's office. He told Hughes that he was trying to board a north-bound freight train with his two companions; that he had gotten on a coal car, two car-lengths ahead of where one of his companions got on, and that he wanted to get off and get back where the other boy was and, in doing so, he fell off the car and got his foot cut off; that he wrote exhibit 1, as plaintiff gave him the facts; that he read it over to plaintiff and the latter signed it.

T. M. Roseman, foreman of defendant's bridge crew, who were constructing the bridge mentioned by plaintiff, testified, that he saw the freight train pass the bridge, but did not see any of the train men on the freight train as it passed over the bridge; that he was present when Mr. Hughes wrote defendant's exhibit 1; that plaintiff told Hughes that he and the two Hawver boys were trying to beat their way to St. Louis, and the other two boys had

gotten on a car two or three cars back of the car he was on, and he jumped off to get on the same car, and when he did that, his foot went under the wheel.

T. P. Williams, witness for defendant, and who was working with Forman Roseman, testified that he saw plaintiff after he was hurt, near the bridge; that plaintiff then said to him: " 'I fell down and the train ran over me. I was walking along the side of the train and I fell down and it ran over me.' He told me he was walking along the side of the train and it knocked him down and got his foot under the train."

Defendant's exhibit 1, reads as follows:

"Crystal City, Mo., 7/17, 1917.

"My name is William Jones and my home is at 4561 Moffitt Ave., St. Louis, Mo. I am 13 years old and was in Crystal City, Mo., on July 17th. I with some friends wanted to go ·back to St. Louis and waited until some freight train was going to St. Louis. I jumped on side of car of Ex 1233 and after getting on car I decided to get off this car and get on another one. On jumping off the car I was on I jumped in sand pile and slid down under the train getting my foot injured. I knew that it was a violation of the Railway Co. rules to jump on freight trains and took all responsibility on myself when doing it.

"WM. JONES.

"Witness G. C. TAYLOR."

The conductor of said train, J. R. Johnson, testified that his train crew on the day of accident consisted of brakemen C. C. Holt and C. O. Roach, the engineer, fireman, and himself as conductor; that both of the above brakemen, were in the caboose with him when the train passed said bridge; that none of his crew were on top of the train as it passed the above bridge; that the conductor of a freight train is in charge of same and the brakemen work under his orders.

C. C. Holt, one of the brakemen on the freight train which injured plaintiff, testified, that he and the other brakeman, Roach, were in the caboose with the conductor

and that none of the crew were on top of said train as it passed the bridge; that he did not order plaintiff to get off the train and did no see any one get hurt; that the conductor is in charge of the train; that he never saw a brakeman put a man off the train.

Clare Roach, the other brakeman on the train which injured plaintiff, was absent from the jurisdiction of the court. Defendant applied for a continuance, and set out what is expected to prove by Clare Roach. To obviate a continuance, plaintiff's counsel admitted that said witness, if present, would testify to the facts stated in said application for continuance. His evidence was accordingly read to the jury from said application for a continuance, as the testimony of said witness. The testimony of Roach corroborates that of the conductor and brakeman Holt; and shows that he was not on the top of the train; nor were any others of the train crew on top of the train, when it passed the bridge; that he did not see plaintiff on the train; that he did not strike plaintiff or order him to leave the train, nor did he threaten to strike plaintiff, etc.

Plaintiff testified in rebuttal that he did not tell T. P. Williams, or any one else, that he walked along the side of train, or that it struck him or knocked him down and he fell under the wheels; that he did not tell Dr. Commerford or Mr. Taylor, or any one else, that he got on the train ahead of the other boys; that he did not tell them or any one else that he jumped off the train in order to get back where his companions were; that he did not tell them he lit on a sand pile and got under the train and sustained his injuries in that way; that he just guessed the train was running fifteen or twenty miles per hour. He further testified that, at the time the doctor dressed his wounds, his foot was paining him so badly that they could hardly keep him there; that he was screaming all the time, "until this hypodermic was injected." He further said that Hughes did not explain anything when the statement was taken and that he was forced to sign it.

Such other facts as may be deemed important, as well as the instructions and rulings of the court, will be considered later.

The jury returned a verdict for plaintiff, as follows:

"We, the jury in the above cause, find in favor of the plaintiff, on the issues herein joined, and assess plaintiff's damages at the sum of fifteen thousand dollars."

On April 10, 1919, the trial court entered judgment on the verdict aforesaid for the full amount. Defendant, in due time, filed its motion for a new trial.

On July 14, 1919, the court required plaintiff to remit, on or before July 28, 1919, $2,500 of said judgment; otherwise, a new trial would be granted. On said July 14th, counsel for plaintiff remitted $2,500 from the verdict and judgment aforesaid. Thereupon a new judgment for $12,500 was entered and defendant's motion for a new trial overruled.

The case was duly appealed by defendant to this court.

I. It is insisted by appellant, under its "Points and Authorities," that a demurrer to the evidence at the conclusion of the whole case should have been sustained. In order to pass upon this question intelligently, Demurrer to the evidence has heretofore been set out very Evidence. fully. Without entering into an extended discussion of this subject, we do not feel justified in holding, as a matter of law, that plaintiff is not entitled to recover.

II. Defendant assigns as error, the action of the trial court in refusing its Instruction B, which reads as follows:

"The jury are instructed that if you believe and find from the evidence, that the plaintiff has made statements out of court respecting the manner in which his alleged Statements injuries were caused, contrary to, and at variance Out of with, his testimony as given on the witness Court. stand, you may take this fact into consideration in determining what weight and credibility you will give to the testimony of the plaintiff."

This class of instructions was approved in some of of the earlier cases in this court, like that of Feary v. Ry. Co., 162 Mo. 78, but we subsequently overruled the Feary case, and others of a like import, upon the theory that instructions like the one in controversy are, in legal effect, a comment upon the plaintiff's evidence and should not be given. The general instruction given by the court, in respect to the credibility of witnesses, was sufficient to cover this question. [Montgomery v. Railroad, 181 Mo. 477; Conner v. Railroad, 181 Mo. 398; Zander v. Transit Co., 206 Mo. 445, 103 S. W. 1006; Stetzler v. Met. Street Ry. Co., 210 Mo. 1. c. 713; Huff v. Ry. Co. & St. Joseph, 213 Mo. 495; Quinn v. Met. Street Ry. Co., 218 Mo. 1. c. 556; Norris v. Railroad, 239 Mo. 1. c. 719; Steele v. Railroad, 265 Mo. 97; State v. Finkelstein, 269 Mo. 612; State v. Goode, 271 Mo. 1. c. 49; State v. Gulley, 272 Mo. 484; State v. Woods, 274 Mo. 1. c. 617-8; State v. Kocian, 208 S. W. 1. c. 46.]

The foregoing authorities, as well as many others which might be cited, settle the law in this State, in respect to above matter, adversely to appellant's contention.

III. It is insisted by appellant that the verdict of the jury in this case for $15,000 was not only grossly excessive, but was the result of passion and prejudice against defendant, or sympathy for plaintiff. It may be

Passion and Prejudice. conceded, as a general proposition, that where plaintiff produces substantial evidence before the jury as to the merits of his controversy, and no error has been committed during the progress of the trial against appellant, the verdict returned under such circumstances for a reasonable amount will be upheld by this court. If, on the other hand, the verdict returned, in the light of all the facts before us, appears to have resulted from either partiality or prejudice upon the part of the jury, this court, in the exercise of its inherent jurisdiction, will not hesitate to reverse and remand the cause for a new trial.

On turning to the record, we find that plaintiff was a lawbreaker and trespasser upon defendant's train at the time and place of accident. He was not there by either the express or implied invitation of defendant.

Doctor James Commerford, George C. Taylor, A. H. Hughes, T. M. Roseman and T. P. Williams, whose testimony is heretofore .set out, were guilty of deliberate, willful perjury, in testifying that plaintiff told them on the day of the accident he got on the train ahead of his companions, dropped off to get back with them, and was injured by the train in passing along same, or the plaintiff was guilty of willful, audacious perjury, in denying that he made any such statements to either. of said parties. There can be no middle ground in respect to this matter. Again, J. R. Johnson, the conductor of said train, and C. C. Holt, a brakeman thereon, were guilty of perjury in testifying that the conductor and both brakemen were in the caboose and that neither of them was on top of the train when it passed the bridge and injured plaintiff, or respondent was guilty of perjury, when he testified that defendant's brakeman was on top of one of the cars in said train, and struck him with a club, while the train was going fifteen to twenty miles per hour, and knocked him off.

In our opinion, the evidence was overwhelmingly against plaintiff as to the manner in which he claims to have been injured, yet, the jury seem to have ignored the clear and positive testimony of defendant as to the merits of the controversy, and returned a verdict in favor of plaintiff for $2,500 more than the trial court declared was reasonable compensation, and which we consider, would have been excessive, to the extent of at least $5,000, if no errors were committed during the progress of the trial. In view of all the facts and circumstances in this case, we are of the opinion that the ends of justice require that the cause should be reversed and remanded for a new trial. [Goetz v. Ambs, 22 Mo. 172-3; Price v. Evans, 49 Mo. 396-7; Whitsett v. Ransom, 79 Mo. 258; Spohn v. Ry. Co., 87 Mo. l. c. 84-5;

Garrett v. Greenwell, 92 Mo. l. c. 125; State v. Primm, 98 Mo. l. c. 372-3; Adams v. Ry. Co., 100 Mo. l. c. 569-70; State v. Prendible, 165 Mo. l. c. 353; Weltmer v. Bishop, 171 Mo. l. c. 116-7; Gibney v. Transit Co., 204 Mo. l. c. 723; Partello v. Railroad, 217 Mo. 1 c. 661; Harper v. Railroad, 186 Mo. App. 296, 172 S. W. 55; Spiro v. Transit Co., 102 Mo. App. l. c. 263-4-5.]

We deem it unnecessary to quote from the foregoing authorities, but it may be said in passing that they fully sustain the conclusions heretofore announced.

IV.   Appellant assigns as error the action of the trial court in refusing to give to the jury its instruction marked "C," which reads as follows:

"The court instructs the jury that the evidence of the absent witness, Clare Roach, as contained in and read to you from the affidavit in support of defendant's application for a continuance, is entitled to and should be given the same weight and credit that you would give it if said witness were personally present and testified to the same facts before you." [Sec. 1960, R. S. 1909; Elsner v. Sup. L. K. & L. of Honor, 98 Mo. 640.]

*Absent Witness: Instruction*

Section 1960 supra, in referring to applications for a continuance, among other things, provides, that if "the court shall find the affidavit sufficient, the cause shall be continued, unless the opposite party will admit that the witness, if present, would swear to the facts set out in said affidavit, *in which event the cause shall not be continued, but the party moving therefor shall read as the evidence of such witness the facts so stated in such affidavit,* and the opposite party may disprove the facts disclosed, or prove any contradictory statements made by such absent witness in relation to the matter in issue and on trial."

We confess our inability to understand upon what theory of law the trial court refused to give said instruction "C." It is clearly within the purview of the above section of the statute, and in Elsner v. Sup. L. K. & L. of Honor, 98 Mo. 640, was held to properly state the law.

This was an important matter from defendant's viewpoint, as the conductor, Johnson, and Holt, the brakeman were present at the trial, and testified in person. Roach was not present, nor was his deposition taken in the case. The defendant was entitled to have the jury informed, under Section 1960 supra, that the testimony of Roach, as read, was to be considered as though he were present and testified to the facts stated in the affidavit. The refusal of said instruction cut off the legal right of defendant's counsel to argue before the jury the view they should take of Roach's testimony. Instruction "C" properly declared the law, and should have been given. The refusal of the court to give same, constituted reversible error.

V.   There was sufficient evidence before the jury to enable the latter to determine whether or not the brakemen on defendant's train at the time and place of
Authority   accident were authorized, while acting in the
of Brakeman. line of their duty, to eject trespassers from appellant's freight trains. [Farver v. Ry. Co., 139 Mo. l. c. 281, 286; Whiteaker v. Railroad, 252 Mo. l. c. 458-9; Gordner v. St. Louis Screw Co., 201 Mo. App. 349; Marcum v. Railroad, 139 Mo. App. 217; Curtis v. Ry. Co., 99 Mo. App. 502.]

VI.   It is insisted by appellant, that plaintiff's instruction numbered one is erroneous. It is not inconsistent with instruction five given at the instance of de-
Duties of   fendant. The two instructions taken together
Brakemen:   fairly presented the law to the jury, in respect
Instructions.  to the duties of brakeman on defendant's train under such circumstances as were detailed in evidence.

VII.   Respondent's instruction numbered 7, on the measure of damages, is assailed by appellant as not properly declaring the law. Upon a careful consideration of same, we are of the opinion that said instruction
Measure   is not obnoxious to the criticism leveled
of Damages. against it by counsel for defendant. If counsel were fearful that the jury might in some way be mis-
287 Mo.—6

led by said instruction as given, they should have sub
mitted to the court an instruction of their own declara-
tory of the law from their own viewpoint. Having fail-
ed to do so, they are in no position to complain of the
one given. [Morton v. S. T. & T. Co., 217 S. W. l. c. 836;
Powell v. Railroad, 255 Mo. l. c. 456; Minter v. Brad-
street Co., 174 Mo. l. c. 491; Browning v. Ry Co., 124 Mo.
l. c. 71-2.]

VIII. Some other questions have been argued in
the respective briefs of counsel, but as they may not
appear upon a retrial of the cause, we have not deemed
it necessary to consider same.

On account of the errors heretofore pointed out, the
cause is reversed and remanded for a new trial. *Mozley*
and *White, CC.,* concur.

PER CURIAM:—The foregoing opinion of RAILEY,
C., is hereby adopted as the opinion of the court. All of
the judges concur.