## THE STATE v. LEE HOPKINS, Appellant.

### Division Two, June 3, 1919.

1. **INSTRUCTION: Purpose.** An essential function of an instruction is to erect for the jury's guidance, in the event given and definite facts are by them found to exist, a definite and unambiguous guideboard along the pathway of their legal duty.

2. ———: **Self-Defense: Voluntarily Entering Difficulty.** An instruction which tells the jury that "self-defense is not available where defendant voluntarily and of his own free will enters into the difficulty with the intent to kill or do some great bodily harm" is not a definite guide to the jury, is ambiguous in its meaning and is erroneous.

3. ———: ———: **Protecting One's Own Life.** An instruction telling the jury that when a defendant voluntarily and of his own free will enters a difficulty to defend his life or his body from great injury, he immediately loses the right of self-defense, if at the time he enters upon his defense his intention is to kill or do great bodily injury to his assailant, is erroneous, because the right of self-defense in many instances permits the intentional killing of the assailant.

4. ——: ——: **Unnecessary Force.** An instruction on self-defense which tells the jury that "no one is justified in using more force than is necessary to get rid of an assailant" is erroneous and a misleading statement of the law. A person is not required to nicely gauge the amount of force necessary to repel an attack, but may act upon appearances.

5. **EVIDENCE: Finding of Rock at Scene of Fight.** Where defendant is charged with assaulting another by throwing a rock at him and beating him on the head with other rocks, testimony of a witness who was not present at the fight that he picked up at the scene a short time thereafter a rock which at the time had blood and hair on it, or the introduction of the rock itself in evidence, is not error, but a proper development of the facts and circumstances.

6. **FAILURE TO INSTRUCT: Preserved for Review.** An assignment that the court erred in not giving an instruction on common assault, if the alleged error is in no manner preserved in the motion for a new trial, will not be considered on appeal.

Appeal from Howell Circuit Court.—*Hon. E. P. Dorris,* Judge.

REVERSED AND REMANDED.

*M. E. Morrow* for appellant.

(1) There was no evidence whatever that the rock used by the defendant was a deadly weapon, except the exhibition of the "bloody rock" brought into court by the State's witness, Lon Callison, which was never connected with the defendant. The court therefore erred in not instructing the jury on common assault. State v. Schloss, 93 Mo. 361; State v. West, 6 Jones (N. C.), 505; 2 Bishop on Criminal Law, sec. 681; State v. Harris, 209 Mo. 423. (2) An instruction that concedes the right of self-defense is destroyed by adding the words: "If the defendant voluntarily entered into the difficulty." Instruction four was, therefore, error. State v. Rapp, 142 Mo. 443.

*Frank W. McAllister,* Attorney-General, and *George V. Berry,* Assistant Attorney-General, for respondent.

(1) The court did not err in refusing an instruction on common assault. There was sufficient evidence show-

ing that the assault was made with a deadly weapon. State v. Miller, 264 Mo. 403; State v. Harris, 209 Mo. 39; State v. Bowles, 146 Mo. 13; State v. Barton, 142 Mo. 55. (2) Instruction 4 taken in connection with instruction 5, clearly defines defendant's right of self-defense. State v. McKenzie, 177 Mo. 713; State v. Gordon, 191 Mo. 26; State v. Sebastian, 215 Mo. 84; State v. Kloss, 117 Mo. 603; State v. Partlow, 90 Mo. 612; State v. Starr, 38 Mo. 74; State v. Hays, 23 Mo. 318.

WILLIAMS, P. J.—Upon an information charging him with assault with intent to kill, upon one Cledy Fox, defendant was tried in the Circuit Court of Howell County, found guilty, and his punishment was assessed at a fine of $100.

The evidence upon the part of the State may be summarized as follows:

The assault occurred on Sunday, May 26, 1918, near a country church in Howell County. The defendant and the prosecuting witness, Fox, were young men, living in that neighborhood, and on the day in question attended Sunday School at the country church. The prosecuting witness left the church first, and after going down the road about 150 yards took a position at rest upon a roadside fence. Shortly thereafter defendant and a companion left the church house and walked down the road, and as they passed the prosecuting witness spoke to him. Thereupon the prosecuting witness made the following inquiry, "Did you fellows have a good time at the dance last night?" and the defendant replied, "None of your G—— D——d business; are you looking for something?" and immediately grabbed a rock and threw the same at the prosecuting witness, missing him.

Fox jumped off the fence, and defendant picked up another rock and was in the act of throwing when Fox's mother ran in between them. Defendant ordered her out of the way and then threw the rock at Fox, striking him a glancing blow therewith, and then reached down

for another rock, saying, "I'll knock your G—— D——d brains out."

At this time Fox, having moved up close to defendant, pushed him a few steps up the road. At this point defendant hit Fox with another rock. They clinched and fell to the ground, Fox on top. Defendant succeeded in turning him over and then struck him on the head with a rock. By-standers pulled defendant off of Fox, and thereupon Fox choked the defendant. Defendant released himself, and mounted a mule and was riding away when Fox threw a small rock, striking defendant in the back.

Fox denied that he rushed towards defendant with a billy when defendant first spoke to him, but stated that after defendant had thrown a rock at him he ran up close to defendant to keep him from throwing another rock.

Shortly after the encounter, Fox went to the office of a physician to have his wounds dressed. The physician testified that there were many gashes all over Fox's scalp, except the back portion thereof. The wounds upon the head required about twenty-five stitches.

From the evidence it may also be inferred that bad blood existed between these two young men prior to this encounter, but the exact cause of the existence thereof does not appear from the record.

The evidence upon the part of the defense may be summarized as follows:

As defendant and his companion passed Fox on the road, Fox asked them if they were homeward bound, and defendant replied in the affirmative. Fox then asked them if they were at the dance the night before. Defendant said that he was and asked why "The Turkeys" (evidently a nick name applied to the family of the prosecuting witness) were not there. Thereupon Fox said "he didn't know, by G——d, that they had to go," and jumped from the fence and drew a billy from his pocket as he advanced towards the defendant. Defendant then picked up a rock and Fox came out into the

road and hollowed, "Hey!" Defendant then threw a rock at Fox, but missed him, and picked up another rock just as Fox's mother stepped in between them. At his command she stepped out of the way and he threw at Fox a second time, missing, and then turned, reaching for another rock. At this juncture Fox ran up close to defendant, striking him with a billy. The stroke knocked defendant to his hands and knees and stunned him. Defendant jumped up with a rock in his hand and hit Fox in the head with it. They clinched and fell to the ground, and defendant was on top of Fox hitting Fox with a rock when some one pulled him off. Defendant thereupon took the billy away from Fox, and Fox's parents took the billy away from defendant and held defendant while Fox choked him. Defendant's companion helped free defendant. Defendant then fled and mounted a mule and started to ride away when Fox threw a rock at him, striking him in the back.

In rebuttal the State was permitted to introduce in evidence over defendant's objection a certain rock which the witness, who was not present at the fight, picked up at the scene of the fight a short time thereafter. This witness stated that there were a number of rocks in the road where he picked this one up and at the time he picked up the rock it had blood and hair upon it.

The only instruction of which appellant makes complaint was instruction four given by the court as follows:

"The law of self-defense is the law of necessity and does not imply the right of attack, nor will it avail in any case where the difficulty is sought or brought on by the party's own wilful act, or where he voluntarily and of his own free will enters into it with the intent to kill or do some great bodily harm to the person so entered into the controversy with, and no one is justified in using more force than is necessary to get rid of an assailant, nor in the use of a deadly weapon to repel assault, unless, at the time there be good cause to apprehend death or great bodily harm from such assailant."

I. Appellant contends that instruction four was erroneous. We are of the opinion this assignment is well taken. We will not undertake to discuss every possible ambiguity or error contained in the instruction, but will mention one or two of the most apparent.

**Self-Defense.**

The instruction says self-defense is not available "where he [defendant] voluntarily and of his own free will enters into it [the difficulty] with the intent to kill or do some great bodily harm."

One of the essential functions of an instruction is to erect for the jury's guidance, in the event given and definite facts are by them found to exist, a definite and unambiguous guideboard along the pathway of their legal duty.

What is meant by the above quoted portion of the instruction? Does it supply a definite guide for the jury's action? Under what circumstances can a man be properly said to have voluntarily and of his own free will entered into a difficulty with intent to kill or do great bodily harm? Does it mean only that the participant must have agreed or consented beforehand to meet his opponent upon the field of combat, as was the ancient custom in duelling? If so, it could have no application to the present case, because there was no evidence to justify the submission of such a theory.

Does the instruction mean that when a man voluntarily and of his own free will enters (that is participates) in a difficulty to defend his life or his body from great injury, he immediately loses the right of self-defense, if at the time he enters upon his defense, his intention is to kill or do great bodily injury to his assailant? If so, then it is clearly erroneous, because the law of self-defense in many instances permits the intentional killing of the assailant. The right to kill or do great bodily injury in self-defense is not limited to an unintentional or accidental killing or injury.

It occurs to us that the instruction is very ambiguous in meaning. What construction the jury would

State v. Hopkins.

place upon such language we can only conjecture. Such language has no proper place in an instruction under the facts of the present case. We are aware that language can be found in some of the cases apparently approving such an instruction and it would appear to be a difficult task to harmonize the decisions on the question. Undoubtedly some loose language has been used in connection with the subject. But we have no hesitancy in saying that the instruction is ambiguous, misleading and clearly erroneous when applied to situations like the one now held in judgment. [State v. Rapp, 142 Mo. 443, l. c. 447; State v. Gordon, 191 Mo. 114, l. c. 126 et seq.]

Furthermore the phrase, ''and no one is justified in using more force than is necessary to get rid of an assailant,'' is also an erroneous and misleading statement of the law. It is well settled that a person is not required to nicely gauge the amount of force necessary to repel an attack, but that he may act on appearances. [State v. Banks, 258 Mo. 479, l. c. 492; State v. Hollingsworth, 156 Mo. 178, l. c. 186.]

II. The evidence showing the finding of the rock with blood and hair on it at the scene of the fight a short time thereafter and the introducion of same in **Evidence.** evidence was, we think, not error. It was a proper circumstance for the jury's consideration with all the facts and circumstances shown in evidence.

III. It is further contended that the court erred in not giving an instruction on common assault. Concerning this point it is sufficient to say the **Motion for New Trial.** alleged error is in no manner preserved in the motion for a new trial.

Other points urged are not such as will likely occur upon a retrial and further discussion is deemed unnecessary.

The judgment is reversed and the cause is remanded. *Faris, J.,* concurs; *Walker, J.,* dissents.