State v. Creed.

# THE STATE v. THOMAS CREED and ROBERT CREED, Appellants.

### Division Two, June 11, 1923.

1. **EVIDENCE: Impeached Witness: Confirmation of Testimony: Declarations out of Court: Exception.** The general rule of law is that the testimony of a contradicted, impeached or discredited witness cannot be confirmed by proving that he made similar declarations out of court. An exception to the rule is that the testimony of an accomplice in crime may be corroborated by showing that when first arrested his narration of the facts of the crime was the same as that given at the trial.

2. **————: ————: ————: ————: Coerced Statement to Police.** Two brothers were charged with the murder of a police officer about five o'clock in the afternoon. A lewd woman, who was in the saloon at the time the shooting occurred, was arrested shortly afterwards, and taken to the police station, where she spent a sleepless night, caused by the officers constantly grilling her and calling her a d—d liar. About six o'clock next morning she made a statement, and it and her testimony later in the day before the coroner and the grand jury were to the effect that she saw the deceased officer hit one of the brothers with a club, after which there was some scuffling between them, and then everybody started to run, and she heard some shots and ran too, and that she knew positively that the brothers had no gun. She was again incarcerated and again grilled, and the police captain accused her of perjury before the coroner and grand jury, and advised her that perjury was punishable by imprisonment in the penitentiary, and that if she did not tell the truth she would be turned over to a certain officer, whom she seemed to fear, for further inquiry. She was questioned by the captain for five hours, and late in the afternoon, being without sleep for thirty-six hours, she made a supplementary written statement, in effect, that she saw the two brothers wrestling in the back room of the saloon with the deceased officer, saw a pistol in the hands of one of them, begged them not to shoot deceased, but they did so, shooting so close to her that the powder

burned her hand. At the trial of the brothers, she testified for the State, and her testimony was in substance the same as her statements written into the supplementary statement made to the police; but on cross-examination she stated that her testimony before the coroner and grand jury was not true, and admitted that in said testimony she had committed perjury. Thereupon the State, for the purpose of confirming her testimony, over the objection of defendants, offered in evidence her supplemental written statement made to the police, and it was admitted for that purpose. *Held*, that it did not come within the exception to the rule, and its admission was error. A coerced corroborative statement, made subsequently to the impeached testimony, is not admissible in evidence for the purpose of rehabilitating such witness's testimony when it was to his interest to make a false statement.

3. ———: Exhibition of Deceased's Clothing to Jury. Where there is no question about the identity of the deceased, the nature of his wound, its location, character or fatality, and the exhibition before the jury of the clothing worn by him at the time of the shooting can throw no relevant light upon any material matter at issue and does not tend to connect the accused any more than it would another with the crime, it is an abuse of the court's discretion to admit such clothing in evidence, for, under such circumstances, the only effect of its exhibition is to inflame the mind of the jury.

4. INSTRUCTION: Self-Defense: Right of Attack. An instruction telling the jury that "the law of self-defense is emphatically the law of necessity, and does not imply the right of attack" is ambiguous, and may mislead the jury.

5. ———: ———: Entering Difficulty. To give an instruction for the State relating to defendant's right to self-defense which contains the words: "Nor will it avail in any case where the difficulty is sought for or induced by the party's own wilful act, or where he voluntarily enters into it, . . . no matter how imminent the peril may become during the progress of the affray, . . . and no one is justified in using more force than is necessary to get rid of an assailant or to repel an assault upon him," is error. (Following State v. Hopkins, 278 Mo. 388, 393.)

6. ———: Imperfect Self-Defense. Where the right of self-defense or imperfect self-defense is involved, and the deceased is possessed of an instrument that defendant might reasonably consider deadly or capable of doing great bodily harm, and has reasonable grounds to fear or apprehend its consequential use upon him, he is not required to nicely gauge the amount of force to be used in defending himself, nor to exercise a perfect judgment, but only to

act in good faith, and an instruction embodying this principle should be given.

7. ———: **Admitting Crime.** Where defendants do not testify, and neither they nor their attorneys say or do anything that can be construed as an admission that they or either of them shot or wounded deceased, it is error to give an instruction telling the jury that "the defendants admit the shooting and wounding, but claim they acted in self-defense."

Appeal from St. Louis Circuit Court.—*Hon. Robert W. Hall,* Judge.

REVERSED AND REMANDED.

*Harvey & Baer* for appellants.

(1)  It was error to permit the prosecution, upon re-examination of the witness Edna Brooks, to introduce in evidence her statement made to the police and her evidence given on her second appearance before the grand jury.  The witness had been thoroughly impeached on her cross-examination by her testimony given before the coroner and also given on her first appearance before the grand jury, and could not lawfully be rehabilitated by statement made subsequently to the impeaching statements.  Flach v. Ball, 209 Mo. App. 401; Kelly v. American Cent. Ins. Co., 192 Mo. App. 20;  Conrad v. Griffey, 16 How. (U. S.) 37; Ellicott v. Pearl, 35 U. S. 412; Queener v. Morrow, 1 Cold. 123;  Stolp v. Blair, 68 Ill. 541;  Legere v. State, 111 Tenn. 368; State v. Caddy, 15 S. D. 167; Robb v. Hackley, 23 Wend. 50;  Ewing v. Keath, 16 Utah, 312; Com. v. Jenkins, 76 Mass. 485;  Waller v. People, 209 Ill. 287;  Chicago City Ry. Co. v. Matthieson, 212 Ill. 297;  People v. Katz, 209 N. Y. 337;  Matter of Hesdra, 119 N. Y. 615;  Griffin v. Boston, 188 Mass. 476; Com. v. Retkavitz, 222 Mass. 249.  (2)  It was error to admit in evidence before the jury the bloody garments of the slain police officer, it being evidently offered solely for the purpose of inflaming the minds of the jury.  State v. Porter, 276 Mo. 387; .State v. Tarwater, 239 S. W.

484; State v. Allen, 234 S. W. 837. (3) Instruction numbered 8 on self-defense is erroneous and does not properly declare the law. State v. Hopkins, 278 Mo. 388; State v. Roberts, 280 Mo. 669; State v. Roberts, 242 S. W. 669. (4) The court erred in refusing to give at the request of defendants Instruction A, on the subject of imperfect self-defense, and Instruction D, to the effect that the defendants were not required by the law to nicely gauge the amount of force to be used in defending themselves. Authorities cited under Point 3. (5) Instruction numbered 7, stating to the jury that the defendants admitted the shooting and wounding, is a flagrant comment upon the evidence by the court, and was error. State v. Vaughn, 141 Mo. 514; Green v. State, 7 Ga. App. 803; People v. Warren, 259 Ill. 213; Cannon v. People, 141 Ill. 270; People v. Lee Chuck, 74 Cal. 30. (6) The defendants' Instruction F, on threats by the deceased, should have been given.

*Jesse W. Barrett,* Attorney-General, and *Henry Davis,* Assistant Attorney-General, for respondent.

(1) When a witness has been impeached by proof of a prior statement inconsistent with the evidence given by the witness at the trial, a prior consistent statement is admissible to show that the evidence given at the trial was not a recent fabrication. State v. Taylor, 134 Mo. 109, 155. A prior consistent statement is also admissible under such circumstances, though no proof was introduced tending to show an inconsistent statement, where the questions or statements of counsel cast a cloud upon a witness through the imputation of a corrupt motive for giving his evidence. Kelly v. American Central Ins. Co., 192 Mo. App. 24; Costello v. Kansas City, 280 Mo. 576, 590. (2) The exhibition of the clothing worn by deceased at the time of the killing was proper for the purpose of showing to the jury the attitudes and relative positions of the deceased and the one who fired the shot. State v. Wieners, 66 Mo. 29; State v. Buchler, 103 Mo.

208; State v. Long, 209 Mo. 382; State v. Tarwater, 293 S. W. 484. (3) Where there is strong uncontradicted evidence that defendants did the killing, and at the trial some evidence is given tending to establish the theory of self-defense, and a number of instructions are requested by them on the law of self-defense, it is not reversible error for the court in giving an instruction on self-defense to assume that the defendants did the killing. State v. Bobbst, 269 Mo. 214, 224; State v. Moore, 101 Mo. 316, 329; State v. Vickers, 209 Mo. 12, 33; State v. Priest, 215 Mo. 1, 9; State v. Mills, 272 Mo. 526, 534. (4) An instruction on a trial for homicide which declares that the right of self-defense does not imply the right of attack, nor will it avail where the difficulty is sought for or induced by the party's own willful act, or where he voluntarily enters into it with the intention of killing or of doing some great bodily harm, is not erroneous when considered in connection with another instruction to the effect that the defendant was justified in killing decedent if defendant from the circumstance had a reasonable cause to apprehend a design on the part of the decedent to kill him or to do some great personal injury and that he had reasonable cause to apprehend immediate danger of such design being accomplished. State v. Johnson, 76 Mo. 126; State v. Huffman, 220 S. W. 851; State v. Caldwell, 231 S. W. 613; State v. Roberts, 242 S. W. 672; State v. Canton, 222 S. W. 449. (5) That part of an instruction which tells a jury that "no one is justified in using any more force than is necessary to get rid of an assailant or to repel an assault made upon him, unless at the time there be good cause to apprehend death or great bodily injury from such assault," is not objectionable as requiring the assaulted person to nicely gauge the amount of force to be used in resisting the assault. Its effect is just the opposite. State v. Roberts, 280 Mo. 669, 681. (6) Where the facts show that bad feeling and enmity existed between defendant and the man he killed some time prior

to the day the killing occurred, that the defendant armed himself with a loaded pistol and he and his brother went to the deceased without solicitation or invitation from him, provoked a difficulty with him and shot him, and there is no evidence whatever that their purpose in provoking the difficulty was to commit any other act than the killing, an instruction on the imperfect right of self-defense is not authorized.  State v. Roberts, 280 Mo. 669, 681; State v. Kelleher, 201 Mo. 614; State v. Jenkins, 178 S. W. 93.  (7) An instruction on the subject of self-defense to the effect that a person attacked is not required to nicely gauge the proper *quantum* or amount of force to be used is properly refused where the court has already instructed the jury that the defendants had the right to use such force as was apparently necessary to resist the assault, and that more force than was necessary could lawfully be used if there was good cause to apprehend death or great bodily injury from the assault.

DAVIS, C.—Robert Creed and Thomas Creed were convicted, after a three days' trial, on the 23d day of April, 1921, of murder in the first degree, and their punishment fixed at imprisonment in the penitentiary for their natural lives, for that, on the 31st day of October, 1920, they shot and killed George Geisler, a police officer of the city of St. Louis.

The evidence on behalf of the prosecution was to the effect that the two defendants, Thomas Creed and Robert Creed, in company with a lewd woman named Edna Brooks, on the afternoon, about five o'clock, of the aforesaid day, entered a saloon or "soft-drink parlor" of one William F. English, at the southwest corner of Clark Avenue and Twenty-first Street in the city of St. Louis; that soon thereafter while the two defendants and the said Edna Brooks were standing at the bar and all of them drinking whisky, Police Officer Geisler entered and spoke to the defendants and others as he passed to the

rear of the room; that upon his returning to the saloon a short while thereafter an altercation occurred between defendant Robert Creed and Officer Geisler, during which Creed referred to Geisler's brother as being a thief and used offensive epithets to the officer (testimony of Wm. F. English). Defendants then went to him, taking positions on either side of deceased. During said altercation the officer struck Robert Creed with his club (testimony of Edna Brooks). Thereupon there was a struggle between the officer and the Creeds and the three of them retreated through the opening at the end of the bar into a large back room connected with the saloon, the deceased being shoved and pushed through by defendants, and shortly thereafter shots were fired in said room, whereupon all the numerous persons in the saloon proper fled to the street through the front door, including Edna Brooks, according to her testimony given before the coroner the morning after the homicide and before the grand jury the same day, as admitted by her on cross-examination. On this trial, however, she stated that she closely followed the defendants and the officer into the aforesaid back room and there tried to prevent any shooting, the officer having his hands up and the defendants being on either side of him, and that shots were fired so close to her as to powder-burn her; that just after the shooting she ran out into the saloon and was hanging upon the railing of the bar, and while there saw the officer run out through the bar-room, and shortly thereafter the defendants, and said that she saw a gun in the hand of one of them as they passed, and then she went out on the sidewalk, and saw the officer fall in the street. She thought that the defendants and the officer were talking in a friendly manner, and did not hear any epithets or abusive language by the defendants until just after the officer struck Robert Creed across the face with his club.

There were a number of people in the saloon playing cards and standing around who saw the officer come

in and he and the defendants talking or arguing together, and who upon hearing the shots ran from the saloon. Soon after the shooting the hat, revolver and club of the officer were found on the floor of the aforesaid back room. The testimony of Edna Brooks in regard to the officer using his club upon the defendants was corroborated by witness Hancen and by witness Thomas O'Conner; and witness John J. Gorman testified that the officer, just before he entered the saloon, made threats against the life of Robert Creed.

Defendants' testimony was that before going to the English saloon they had been drinking but that no pistol was given to them. One witness testified that the deceased said just before entering the saloon: "I see that s— o— b— Creed here again. About the only way that I can keep him off my beat is to kill him." Another witness said that the officer upon entering the saloon approached the appellants and cursed Robert Creed, began striking him and drove him into the back room; that Tom Creed, asked the policeman not to hit Bob, but just to lock him up. This witness did not see the shooting, but heard Tom Creed say immediately afterwards, "What have you done Bob, what have you done?" He heard Bob Creed reply: "He caused it himself, Tom."

I. It is a general rule of law that the testimony of a contradicted, impeached or discredited witness cannot

**Confirmation of Testimony: Coerced Statement out of Court.** be confirmed by proving that he made similar declarations out of court. [People v. Katz, 209 N. Y. 1. c. 338.] An exception to the rule is later noted.

In objecting to the admission in evidence of the rehabilitating statement of witness, Edna Brooks, the defendant takes the position that her trial testimony, having been impeached on cross-examination by her testimony before the coroner, and on her first appearance before the grand jury, could not be restored by statements made subsequent to the impeachment. To lucidly understand the proposition presented, a review of the evidence is apropos.

On the same evening, subsequent to the shooting, Edna Brooks was arrested. The next morning about six a. m. she made a statement in writing to the police officers, in effect, that she did not see the shooting. This statement was made after a sleepless night, caused by the officers constantly grilling her, and calling her a damned liar. Later in the morning, she was examined before the coroner and the grand jury, her evidence tending to show before each "that she saw the deceased hit defendant; Bob Creed, with a club, after which there was some scuffling between them, and then she saw everybody get up and start to run, and she heard some shots and she ran, too; that she knew positively the Creed boys had no gun." She was again incarcerated and again grilled. The police captain accused her of perjury before the coroner and grand jury. (On the trial, she admitted perjury before the coroner and on her first appearance before the grand jury). She was questioned by him five hours, and advised that perjury was punishable by imprisonment in the penitentiary, and that if she did not tell the truth she would again be turned over to a certain officer (whom she seemed to fear) for inquiry. That afternoon, about 5:30 p. m., being without sleep for about thirty-six hours, she made a supplementary written statement, in effect, that she saw Bob Creed and Tom Creed wrestling in the back room with deceased, saw a pistol in Bob Creed's hand, begged them not to shoot deceased, but they did so, shooting so close to her that the powder burned her hand. Over the objection and exception of defendant, to rehabilitate her testimony, the State introduced the supplementary statement made by the witness to the police.

We think the admission, in evidence, of the supplementary statement, was error.

It is clear from the epitome of facts, that the supplemental or additional statement made by the witness to the police does not come within the exception to the general rule, that the testimony of an accomplice in crime

State v. Creed.

may be corroborated by showing that when first arrested he gave the same relation of facts which he had given on oath during the trial. The statement introduced in evidence by the State was an attempt to prove the verity of evidence made on oath by a statement not on oath at a time when the witness had been coerced by loss of sleep and a grilling such as to overpower her will. The defendant had discredited the witness by cross-examination and by her admission of perjury. The purpose of the State was to rehabilitate it. There were two inconsistent statements, one of which was necessarily false. Defendant did not offer the cross-examination to prove the verity of her testimony, but to show that it was unworthy of belief and could not be relied upon. Her testimony was discredited and she was a perjurer by her own admission. Her impeachment was not disproved by the use of the supplementary statement, and that was all it offered to establish; nor was it admissible as substantive proof, for it was hearsay. The only way to meet evidence of a contradictory statement is to prove the witness did not make it. In the present case she admitted making it.

There seems to be no doubt that at the time the witness made the supplemental statement, she was under the moral and physical duress of the police department. Her interest and motive was to escape punishment and obtain sleep and peace. Her will power had been battered down, so that she was under the complete domination of the police, and while it is possible for her testimony, given at the trial, to be true, the coercion used was sufficient to cast grave doubt upon its verity. As was said in Legere v. State, 111 Tenn. 368, l. c. 374-5, in no case, so far as we have been able to discover, has corroborative testimony been admitted when it was to the interest of the witness to make a false statement. [Ewing v. Keith, 16 Utah, 312; Conrad v. Griffey, 11 How. (52 U. S.) l. c. 491; Ellicott v. Pearl, 10 Peters, 439.]

The supplementary statement was again inadmissible, for that it was made subsequent to the testimony by which the witness was impeached. Such testimony may not be used to import verity. Out of such procedure would arise corruption and perjury. It would tend to defeat the ends of justice, by supporting the faltering testimony of a discredited, impeached or perjured witness. Admitting such testimony would resolve itself in a race resulting in rebuttal and sur-rebuttal, to determine which party could produce the greater number of witnesses in contradiction. This would not determine their credibility and would lead to injustice.

In Conrad v. Griffey, 11 How. (U. S.) l. c. 492, 13 L. Ed. 779, the Supreme Court lays down the rule that the rehabilitating statements, not having been made prior in time to the discrediting or impeaching statements, do not appear on principal or precedent to be competent. The case follows the rule proclaimed in England and in a number of our states. This is the rule adopted in the following cases: Brazier's Case, 1 East P. C. 444; Ellicott v. Pearl, 10 Peters, 439; Stolp v. Blair, 68 Ill. 541; Legere v. State, 111 Tenn. 368; Queener v. Morrow, 1 Cold. 123; State v. Caddy, 15 S. D. 167; Robb v. Hackley, 23 Wend. (N. Y.) 50; Ewing v. Keith, 16 Utah, 312; Com. v. Jenkins, 76 Mass. 485; Waller v. People, 209 Ill. 287; Matter of Hesdra, 119 N. Y. 615; Griffin v. Boston, 188 Mass. l. c. 476. The St. Louis Court of Appeals in Flach v. Ball, 209 Mo. App. 389, discussed the question and reached the same conclusion. We think rightly so. The present case is distinguished from State v. Maggard, 250 Mo. 335, for the rehabilitating statement there was prior in point of time to the impeaching statement.

II. Defendant complains of the admission in evidence of the clothing worn by the deceased at the time of the shooting. In State v. Porter, 276 Mo. 387, 207 S. W. l. c. 777, WALKER, J., for the court, says, that such

**Exhibition of Clothing.** demonstrative evidence was admissible, within the discretion of the trial court, to connect the accused with the crime, to prove the identity of the deceased, to show the nature of the wound, or throw any relevant light on a material matter at issue. It must, however, appear that the discretion was not abused. In that case, and the present case, there was no question about the identity of the deceased, the nature of the wound, its location, character or fatality. We cannot see how it could throw any relevant light upon any material matter at issue, nor how the exhibition of the clothing before the jury could have tended to connect accused with the crime more than another. The doctor's evidence located the wound, as well as its size and course. The only effect of the exhibition of the clothing was to inflame the jury. We think the court committed error in permitting the exhibition of it before the jury.

III.   Defendant contends that Instruction 8, on self-defense, is erroneous and does not properly declare the law. This instruction states "that the law of self-defense **Self-Defense.** is emphatically the law of necessity, and does not imply the right of attack." This is ambiguous. If it conveys to the jury that one may not attack without first being attacked, then there is no fault in it. If on the other hand the jury may gather its meaning as prohibiting an attack, by the assailed, as a means of defending himself, then we think it misleads the jury. Capable of being so interpreted, we think the ambiguity error.

Complaint, regarding said instruction, is further made of the following: "Nor will it avail in any case where the difficulty is sought for or induced by the party's own willful act, or where he voluntarily enters into it, . . . no matter how imminent the peril may become during the progress of the affray, . . . and no one is justified in using any more force than is necessary to

get rid of an assailant or to repel an assault made upon him.''

We think the above excerpts ambiguous, extending the vice to the whole instruction. The above portions were commented on in State v. Hopkins, 278 Mo. 388, l. c. 393-4. We are unable to add to the clear reasoning therein, and think it applicable to the present state of facts. We hold the giving of the above instruction error. [State v. Roberts, 280 Mo. 669, l. c. 682, 217 S. W. 988; State v. Roberts, 242 S. W. 669.]

IV. Defendants complain that the court erred in refusing to instruct the jury on their right of imperfect self-defense and on the subject of nicely gauging the amount of force to be used in perfect or imperfect self-defense. The testimony for the State tended to show that defendants gave the first provocation and brought on the difficulty by the use of offensive language, and that then the deceased struck Bob Creed with his club. To this point the testimony fails to show an assault, actual or threatened, by the defendants, toward the deceased, but merely shows the use of vile names and offensive language. The next act related in evidence is the striking of Bob Creed on the head or in the face, by deceased, with the policeman's club. We then find, according to the State's evidence, Bob and Tom Creed pushing and shoving the deceased through the passage to the rear room. According to the testimony of the defense, we find deceased using his club to force Bob Creed through the passage to the rear room, and Tom Creed asking the deceased not to hit Bob, but just to lock him up.

The above testimony tends to show that Bob and Tom Creed brought about the argument, but fails to show a felonious act committed or attempted on their part before the use of the club. After bringing about the difficulty, there was evidence to the effect that the Creeds defended themselves from a felonious attack. Therefore an instruction involving the right of imperfect

or incomplete self-defense should have been given. [State v. Hopkins, 278 Mo. 288, 213 S. W. 126; State v. Roberts, 280 Mo. 669, 217 S. W. 988; State v. Roberts (same case), 242 S. W. 669.]

Where either the right of self-defense or imperfect self-defense is involved and the assailing party is possessed of an instrument that the defendant might reasonably consider deadly or capable of doing great bodily harm, and has reasonable grounds to fear or suspect its consequential use, the defendant is not required to nicely gauge the amount of force to be used in defending himself. The legal requirement is that of good faith only, and does not demand perfected judgment. We therefore think the court should have given an instruction embodying that principle. [State v. Hopkins, 278 Mo. 388 1. c. 394.]

V. The defendants did not take the witness stand. Neither they nor their attorney said or did anything that could be construed as admitting that they, or either of them, shot or wounded deceased. The court then committed error in giving that part of instruction seven, which reads: *"The defendants admit the shooting and wounding,* but claim they acted in self-defense," for the burden was on the State to prove beyond a reasonable doubt that defendants or one of them shot deceased. [State v. Vaughan, 141 Mo. 514, 1. c. 521.]

*Admitting Crime.*

VI. Instruction F was asked by defendants, to the effect, that the jury may consider uncommunicated threats made by deceased against Robert Creed as tending to explain the conduct of deceased. This instruction should not have been given as it was an unwarranted comment upon the evidence, singling out and giving undue prominence to certain portions. The court covered the subject, in its general instruction, that the jury could consider all the facts and circumstances in arriving at its verdict. We think

*Uncommunicated Threats.*

the court did not err in refusing it. [State v. Cruts, 288 Mo. 107; State v. Edelen, 288 Mo. 160; State v. Adkins, 284 Mo. 680; Burton v. Holman, 288 Mo. 70; Jones v. Railway, 287 Mo. 64.]

For as much as the foregoing errors deprived defendants of a fair and impartial trial, we reverse and remand the case to be retried in accordance herewith. *Railey* and *Higbee, CC.*, concur.

PER CURIAM:—The foregoing opinion of DAVIS, C., is hereby adopted as the opinion of the court. *Walker, J.*, concurs; *David E. Blair, P. J.*, and *White, J.*, concur in paragraphs 1, 2, 3, 4 and 5, and the result.