THE STATE v. RALPH ORA MILLER, Appellant.—143 S. W. (2d) 241.

Division Two, September 27, 1940.

*Roy McKittrick*, Attorney General, and *W. J. Burke*, Assistant Attorney General, for respondent.

TIPTON, J.—In the Circuit Court of the City of St. Louis, the appellant was convicted of murder in the second degree for the killing of Joe Ducas, and his punishment was assessed at imprisonment in the State penitentiary for a term of fifteen years.

The facts as shown by the evidence are as follows: The appellant was married to Mary Nelson; in November, 1937, he was out of work and left St. Louis to go to Miami, Florida, to find work; he told his wife to sell the household furniture and come to Miami; after being in Miami four days he wired his wife not to sell the furniture as he was returning home; when he returned to St. Louis he found the apartment vacant and that the furniture had been sold; his wife who was then living with a woman by the name of Mrs. Hazel Kearns, refused to have anything to do with the appellant; and his wife obtained a divorce from him in March, 1938. There was evidence that appellant's wife was living with the deceased both before and after the divorce.

On May 4, 1938, about 3 o'clock P. M., the appellant entered a tavern located across the street from the Cupple's Manufacturing Co., where the deceased was employed, and drank a glass of beer. He then went across the street and stood about twenty feet from an alley where the deceased's car was parked. Shortly thereafter, the deceased left the building where he was employed and started to enter his automobile, and about that time the appellant walked to the door of the car and, according to State's evidence, shot the deceased twice. No witness for the State or appellant, except appellant, testified to any conversation between the deceased and the appellant.

The appellant's testimony in regard to the killing is as follows: He found out that his former wife was living with deceased; he went to the house several times in attempts to see her so that they could go back to living together; on the evening of May 3, 1938, he met the

deceased and had a conversation with him in regard to payment for the furniture; on the following day he went to the Cupple's Manufacturing Co., and waited until the deceased came out; when the deceased was about ten or fifteen feet from the automobile he started to walk over to the automobile and said, "Hello, Joe, I came down here to get that money;" and at that time the deceased was right at the automobile.

He further testified: "Ducas looked around at me and said 'What in the Hell are you doing here?' and I said 'You invited me down to get that money to pay for my furniture,' which he had agreed to do, and he said 'Well, I'll furniture you,' and he reached into his automobile and I didn't know what he was doing, and he came out with a wrench and I backed up, and he had that wrench in his hand and he said, 'I'll fix you, you old bastard, you are too old for that girl anyway,' and I pulled out my pistol and I shot and he staggered over to the alley and fell down, and I proceeded to the police station and gave myself up, but within three blocks of the police station I was captured there, but that was my intention to go to the police station and give myself up." Q. "When you shot him what did you shoot him for?" A. "He had this wrench in his hand and he was raising it to hit me with it." Q. "Was he outside of the car?" A. "Yes, sir." Q. "Did he come outside of the car with the wrench?" A. "He did."

■ "The general rule is that a presumption of murder in the second degree arises from an intentional killing of a human being by another where a deadly weapon is used by him at a vital part of the body, absent proof of other facts tending to show deliberation to raise such killing to first degree murder or to show want of premeditation and malice to reduce the killing to manslaughter or to show that such killing was excusable or justifiable." [State v. Snow, 293 Mo. 143, l. c. 149, 238 S. W. 1069.]

The evidence was sufficient to sustain a verdict of murder in the second degree.

■ The appellant contends that the trial court erred in giving instruction number four, which is as follows:

"The defendant has interposed as a defense what is known in law as the right of self-defense. Upon this question, the Court instructs you the right to defend one's self from danger, not of his own seeking, is a right to which a party may have recourse under certain circumstances and conditions to prevent any reasonable apprehended injury upon himself by another. Therefore, if you believe and find from the evidence in this case that at the time the defendant Ralph Ora Miller, shot and killed Joseph L. Ducos, if you find that the defendant did actually shoot Joseph L. Ducos, he, the defendant, had reasonable cause to apprehend a design on the part of the deceased to kill defendant or do him some great bodily harm, and that there was

reasonable cause for him, the said defendant, to apprehend immediate danger of such design being accomplished, and that he shot and killed the deceased, if you find he did shoot and kill him, to prevent the accomplishment of such apprehended design, and that at the time he, the said defendant, did so shoot and kill the deceased, if you find he did so, he had reasonable cause to so believe and did believe it necessary to use said pistol in the way he did to protect himself from such apprehended danger, and in that case the killing was not felonious, but was justifiable, and you should acquit him upon the ground of necessary self-defense. It is not necessary to this defense that the danger should have been real or actual, or that it should have been impending and immediately about to fall upon him. All that is necessary is that the defendant had reasonable cause to believe and did believe those facts, and if you believe he shot in self-defense to prevent such expected harm, if you find he did shoot, then you must acquit the defendant. But, before you can acquit on the ground of self-defense, you ought to be satisfied that defendant's cause of apprehension was reasonable. The Court instructs you that if you believe from the evidence that defendant shot and killed the said Joseph L. Ducos unnecessarily, and when he did not have reasonable cause to believe that the said Joseph L. Ducos intended to kill him or to do him some great bodily harm, or that the defendant, Ralph Ora Miller, wilfully sought or brought on the difficulty or voluntarily entered into such difficulty, then in that case the defendant cannot justify himself on the ground of self-defense and you cannot acquit him on the ground.''

The appellant contends that the instruction is erroneous in that it fails to direct the jury that he had a right to act upon appearance. True, it does not use the term ''appearances'' (nor did appellant's refused Instruction D) but it does say that ''it is not necessary to this defense that the danger should have been real or actual, or that it should have been impending and immediately about to fall upon him.'' This same contention was made in the case of State v. Traylor, 339 Mo. 943, 98 S. W. (2d) 628, l. c. 632, and we disposed of it in the following language, ''This, we think, is substantially equivalent to the stock phrase usually employed in that connection, and in the absence of a more specific repuest, is sufficient.''

The appellant also complains of the part of the instruction which told the jury that he voluntarily entered into the difficulty, then he cannot justify himself on the ground of self-defense.

''Several times instructions containing the same or similar language have been condemned by this court. [State v. Burns, 278 Mo. 441, 447, 213 S. W. 114, 116; State v. Hopkins, 278 Mo. 388, 393, 213 S. W. 126, 128; State v. Canton (Mo. Div. 2), 222 S. W. 448, 449; State v. Creed, supra, 299 Mo. 307, 318, 252 S. W. 678, l. c. 681; State v. Moore (Mo. Div. 2), 29 S. W. (2d) 148, 150; State v.

Dollarhide, 333 Mo. 1087, 1090, 63 S. W. (2d) 998, 999.] The reason given is that expressions so broad and unqualified include even voluntary acts of the defendant done in self-defense. It is said, in other words, that if a defendant is attacked without provocation on his part and voluntarily defends himself, he voluntarily engages in the fight, and yet by such an instruction he is denied his legal right of self-defense." [State v. Williams, 337 Mo. 884, 87 S. W. (2d) 175, l. c. 179, 100 A. L. R. 1503.]

■ Appellant contends that it was error for the trial court to refuse his instruction D, that it was error to fail to tell the jury it was not necessary for the appellant to nicely measure the proper quantity of force necessary to repel the assault. In the case of State v. Traylor, supra, we held under similar circumstances that the refusal to give the identical instruction was error. We see no reason to depart from that ruling. We think this instruction should have been given, or one embodying the same thought.

From what we have said, it follows that the judgment of the trial court should be reversed and remanded. It is so ordered. All concur.