State v. Jones.

# THE STATE v. LEE JONES, Appellant.

### Division Two, June 5, 1925.

1. **INSTRUCTION: Omitting Necessary Element.** An instruction for the State which purports to cover the whole case is erroneous if it omits an essential element, such as self-defense; and such omission is not cured by a separate instruction defining the omitted element.

2. ———: **Assault with Intent to Kill: Omission of on Purpose and with Malice Aforethought: Statutes.** Sections 3262 and 3263, Revised Statutes 1919, define different degrees of the offense of an assault with intent to kill, and under Section 3692 the jury is authorized, under proper instructions, to find an accused guilty of any degree of the offense inferior to that charged; and therefore, where the charge is based on Section 3262, which declares that every person who shall "on purpose and of malice aforethought" cut or stab another, etc., an instruction which omits the words "on purpose and of malice aforethought" is not prejudicial error against defendant.

3. ———: ——— **Knife: Assumed to be Deadly Weapon.** An instruction is not erroneous in not requiring that the knife with which the assault was committed was a deadly weapon, where the wounds inflicted show that it was of a deadly character.

4. ———: **Apprehension of Danger.** It is not error against defendant to instruct the jury that, at the time he cut and stabbed another, it was necessary that the defendant should have believed that the danger was actual and about to fall on him and that there was reasonable cause for such belief.

Corpus Juris-Cyc. References: Criminal Law, 16 C. J., Sections 2490, p. 1047, n. 65; 2495, p. 1055, n. 2: 17 C. J., Section 3729, p. 359, n. 64. Homicide, 30 C. J., Sections 621, p. 374, n. 52; 628, p. 383, n. 3; 642, p. 398, n. 41, New; 663, p. 418, n. 8.

## Appeal from Buchanan Circuit Court.—*Hon. W. H. Utz, Judge.*

REVERSED AND REMANDED.

State v. Jones.

*J. V. Gaddy* for appellant.

(1) The court erred in giving Instruction 4. First, because it directs a verdict and does not negative the defense of self-defense. Second, because it does not require the jury to find the knife said to be used by the appellant was a deadly weapon. Third, because the giving of Instruction 5 did not cure the error in Instruction 4. State v. Gabriel, 256 S. W. 767; State v. Slusher, 256 S. W. 817; State v. Helton, 234 Mo. 559; State v. Stubblefield, 239 Mo. 526. (2) The court erred in giving Instruction 5 and failing to give an instruction justifying the defendant in the assault if the jury found that he stabbed the prosecuting witness in the defense of his property.

*Robert W. Otto,* Attorney-General, for respondent; *Will R. Frank* of counsel.

(1) The instructions properly declare the law and fairly submitted the case to the jury. State v. Lewis, 248 Mo. 504; State v. Parmenter, 278 Mo. 540; State v. Maupin, 196 Mo. 174; State v. Hudspeth, 159 Mo. 178. (2) Appellant's complaint in his motion for new trial that the court failed to instruct on all of the evidence of the case is without foundation here. He did not pray the court to instruct on all of the law of the case and did not save any exceptions to its failure so to do, hence this point is not before this court for decision. State v. Vinco, 171 Mo. 591. The instructions given by the court presented all of the law of the case and fairly submitted the case to the jury.

WALKER, P. J.—The appellant was charged by information in the Circuit Court of Buchanan County with an assault with intent to kill, and upon a trial to a jury was found guilty and his punishment assessed at two years' imprisonment in the penitentiary. From this judgment he appeals.

One Mike Flaherty, on the 21st day of October, 1923, kept in the city of St. Joseph what, for euphony and by

way of designation, is called a "soft-drink parlor." On that day Charles Fairbanks, the person assaulted, upon entering this place found the appellant and Flaherty in a quarrel over an unpaid bill of the former. Upon the entrance of Fairbanks, Flaherty handed him a twenty-dollar bill which it appears was the property of the appellant, and asked him—Fairbanks—to go out and get change for it. As the bill was handed to Fairbanks, the appellant, prefacing his remark with a vile epithet, said to Fairbanks, "What have you got to do with it?" "Not a thing" said Fairbanks; "I was just trying to do you a favor." "Then," said the appellant with an oath, "keep out of it." Fairbanks then handed the bill to the appellant, who continued to curse him. The former finally said to the appellant: "If you don't stop this abuse I will knock you down." Fairbanks and Flaherty then walked to the other end of the counter, and while the former was standing with his back to the appellant and in the act of handing an account he had against Flaherty to the latter for payment, the appellant rushed up behind Fairbanks, stabbed him several times and ran out of the room, followed by Fairbanks. The appellant, after running several blocks pursued by Fairbanks, was apprehended by the police and bystanders, and Fairbanks was prevented from assaulting him. An ambulance was called, and Fairbanks was taken to a hospital where he remained for some time.

Upon an examination of Fairbank's wounds by a surgeon immediately after the assault it was disclosed that he had a cut on his right side below the ribs through which his intestines were visible; and one on his left side below the ribs in the front part of his abdomen, and a cut on his left hand. The wounds were given attention by the surgeon, a Dr. Thompson, under whose care Fairbanks remained for about three weeks. The surgeon testified that the wounds were such as could have been inflicted by a sharp instrument. An open knife was identified as having been found in a fence corner at a point where the appellant had jumped over the fence while

fleeing from Fairbanks. One witness testified that as the appellant passed her in his flight before he reached the fence, she saw a knife in his hand. When the appellant and Fairbanks were apprehended, and the latter, weak from the loss of blood was being supported by bystanders, he said, ''That is the man,'' indicating the appellant, ''that cut me.'' The foregoing embodies the relevant portions of the testimony for the State.

Several witnesses testified to the former peaceable character of the appellant. His own testimony was substantially as follows:

''I was in Mike Flaherty's place on the night of October 31, 1923, talking with Flaherty. Fairbanks and two or three others were there when I came in. I had a conversation with Flaherty in the presence of Fairbanks. I ordered a couple of drinks and gave Flaherty a twenty-dollar bill to pay for them. We got into an argument and Flaherty said I didn't give him a twenty-dollar bill, and Fairbanks stepped up and asked if I was trying to bulldoze Flaherty. I said, 'No,' and asked him if he was running the place. He said, 'No,' and I then asked him what he was butting in for, and he said he would make it his business. Flaherty handed him the twenty-dollar bill and as he started out of the door with it I called to him and told him not to leave with my money unless I knew where he was going and he said that he would knock me down. He said this a dozen times and as he got to the front door and turned to go out he applied a vile epithet to me and struck me a little glancing blow behind my left ear, grabbed me by both arms and backed me over against the bar by the stove. I was facing the north while he was holding me, and Mike started out from behind the bar and I thought he had some kind of weapon in his hand. I had heard that Mike was a bad actor or a bad man and that he would injure you or kill you, and I thought the best thing I could do was to get away from there to keep from being mobbed. Mike was coming in my direction and I saw the only way was for me to get out without being murdered and I cut

Mr. Fairbanks but had no intention of killing him. I was scared and I cut him to get loose, then ran and tried to get away. I ran several blocks and then they caught me. Fairbanks followed me. I ran because I was scared and afraid that Fairbanks and Flaherty were going to kill me. After Fairbanks turned me loose and I started to run Flaherty threw something at me. After they caught me down in the alley and were holding me I heard Fairbanks say: 'Let me get to him; I will kill the — — —.' I never got my twenty-dollar bill back. Fairbanks had it the last time I saw it. I was over by the stove when I cut Fairbanks. He had me by both arms. He was stronger than I am and was able to hold me. I jumped over the fence trying to get away from him. I threw my knife away. The next morning after the trouble I told Captain Duncan and Mr. Kirtley that I was drunk and that I knew nothing about what occurred and if I cut Fairbanks I didn't remember anything about it."

I. The giving of instruction numbered four for the State is assigned as error. This instruction is as follows:

"4. The court instructs the jury that if you find and believe from the evidence that at the County of Buchanan and State of Missouri, on or about the 31st day of October, 1923, the defendant Lee Jones feloniously and on purpose assaulted the prosecuting witness Charles Fairbanks, and cut and stabbed him, with intent to kill the said Charles Fairbanks or do him some great bodily harm, then you will find the defendant guilty of assault with intent to kill, and assess his punishment at imprisonment in the State Penitentiary for a term of not less than two nor more than five years, or a term in the county jail not less than six months, or by a fine of not less than one hundred dollars and imprisonment in the county jail not less than three months, or by a fine of not less than one hundred dollars.

"The word 'feloniously,' as used in these instructions, means wickedly, and against the admonition of the law; that is, wickedly and unlawfully."

*Omission of Essential Elements.*

The infirmity of this instruction, as contended ·by counsel for appellant, is that while purporting to cover the entire case and to direct a finding, it does not embrace all of the issues and the law thereto applicable.

This is not a question of first impression in this court. It was first adverted to somewhat incidentally in State v. McNamara, 100 Mo. l. c. 105; but in State v. Lentz, 184 Mo. l. c. 235, it was affirmatively held that an instruction is erroneous which purports to cover the whole case if it omits an essential element of the offense charged and that the omission cannot be cured by a separate instruction defining the omitted element. Later, in State v. Helton, 234 Mo. l. c. 564, et seq., Bond, while a commissioner of this court, with his usual precision of statement, held in an opinion, unanimously adopted, in a case of an assault with intent to kill, that where the right of self-defense is interposed, an instruction, given at the request of the State, which purports to cover the whole case, is erroneous if it fails to hypothesize the right of self-defense thus·interposed. In State v. Wicker, 222 S. W. (Mo.) 1014, in recognition of the rule announced in the foregoing cases, we held that the use of certain words in an instruction purporting to cover the whole case in a charge for an assault with intent to kill, drawn under Section 4481, Revised Statutes 1909 (now Sec. 3262, R. S. 1919), which contains the words "on purpose and of malice aforethought," sufficiently negatived the defense of self-defense and was not subject to the objection held to obtain in the Helton and preceding cases.

In State v. Gabriel, 256 S. W. (Mo.) l. c. 767, Judge D. E. Blair, in an opinion which met with the concurrence of the judges of this Division, held that an instruction purporting to cover the whole case which ignored the defense of self-defense constituted reversible error and was not cured by a separate instruction. Instruction Number Four violates the rule announced in all of these cases and in so doing constitutes an error which necessitates a reversal of this case.

State v. Jones.

Further objection is urged to the instruction in that it does not conform to the statute under which the information was drawn; that the charge was based upon a violation of Section 3262, Revised Statutes 1919, or what is sometimes designated as the "bloody section," and not upon the succeeding section, 3263, defining a felonious assault with intent to kill, without averring that it was on purpose and with malice aforethought, and that the instruction only defines an offense under the latter section. There is no merit in this contention. The sections referred to define different degrees of the same offense. When this is the case, under a general statute, Section 3692, Revised Statutes 1919, the jury is authorized, under proper instructions, to find the accused guilty of any degree of the offense inferior to that charged. In addition, a succeeding section, 3693, having especial application to assaults, authorizes a conviction of a lesser degree than the offense charged but which is necessarily included therein. These statutes have received the affirmative interpretation as to the authorized character of the instructions that may be employed in such cases. In State v. Foster, 281 Mo. 618, we held that an instruction for the State designed to cover the whole case which omitted the words "malice aforethought," a definitive characteristic of a charge under Section 3692, was not erroneous. The reason for this ruling was stated to be the statute, Section 4904, now Section 3693, supra.

In State v. Groves, 194 Mo. l. c. 457, in construing what are now Sections 3692 and 3693, supra, we held that a defendant cannot complain of an instruction on felonious wounding on the ground that if the State's witnesses are to be believed he was guilty of an assault with intent to kill, since the former is a less offense than the latter. There is no merit, therefore, in this contention.

It is also contended that this instruction is erroneous in not requiring the jury to find that the knife used by the appellant in the commission of the assault, was a deadly weapon.

We held in State v. Feeler, 284 Mo. 673, in a prosecution for an assault with intent to kill under what is now Section 3262, supra, that an instruction defining the assault was not erroneous in failing to submit to the jury the question as to whether the beer bottle with which the assault was committed was a deadly weapon, where the wound inflicted was of such a nature that the character of the weapon might be presumed.

GANTT, J., in speaking for the court in State v. Harris, thus lucidly states the reason for the conclusion subsequently reached in the Feeler case, to this effect: that the use of the words "with a deadly weapon" as descriptive of the knife with which the stabbing was done, in an information charging a felonious assault with intent to kill, under what is now Section 3262, is unnecessary, and if used, such words may be treated as surplusage and their proof not required. This being true an instruction need not be given requiring the jury to find that the knife was a deadly weapon.

In State v. Keener, 225 Mo. 488, which distinguishes the Harris case upon a ruling therein not involved in the case at bar, it is held that an instruction is not erroneous that assumes the deadly character of the knife used, in view of the fact that the evidence showed that the wounds inflicted were of a dangerous character. This fact was disclosed by the testimony in the instant case, and we overrule this contention.

II. Error is assigned in the giving, at the request of the State, of instruction numbered five. This instruction is as follows:

"5. The court instructs the jury that if you find and believe from the evidence that the defendant cut and stabbed the prosecuting witness Charles Fairbanks, and that, at the time the defendant so cut and stabbed said Fairbanks, the defendant believed and had reasonable cause to believe that said Fairbanks and Mike Flaherty were about to do him some great

Apprehension.

bodily injury, then the defendant had the right to cut and stab the prosecuting witness in his own defense.

"The court further instructs the jury, however, that it is not necessary that the danger should have been actual or about to fall on the defendant, but it is necessary that the defendant should have believed it, and that there was, at the time the defendant cut and stabbed the prosecuting witness, reasonable cause for such belief. It is for you to say, from the evidence in the case, whether the defendant did believe and had reasonable cause to believe that such impending harm, at the time he cut and stabbed the prosecuting witness, was about to fall on him. If as a fact he did not have reasonable cause to believe that such danger was impending at the time he cut and stabbed the prosecuting witness, then he is not justifiable; his believing himself in danger is not sufficient; he must have had reasonable cause to believe it; and of that, you are to determine from all the facts and circumstances in evidence."

Counsel for the appellant does not stress his objection to this instruction. It correctly hypothesizes the facts and is in the form frequently approved by this court. [State v. McQuitty, 237 Mo. 232; State v. Higgerson, 157 Mo. 400; State v. Price, 186 Mo. 140; State v. Gooch, 105 Mo. 392; State v. Starr, 38 Mo. 270.] If possible it is more favorable to the appellant than the facts warrant, but of this he cannot complain.

The defense was not made on the theory that the assault was committed in an effort to recover or protect the appellant's property. This contention is evidently an afterthought "begotten" as Swift says "in the fruitful womb of mature reflection." It possesses no merit because of a lack of foundation.

The jury found that the evidence for the State was worthy of belief and of a character as to probative proof sufficient to sustain the verdict. A review of same furnishes no basis for a different conclusion. The error, noted in Instruction Number Four, will, however, necessitate a reversal and a remanding of this case. It is so ordered. All concur.