State v. Pool.

---

## THE STATE v. HERSCHEL POOL, Appellant.

Division Two, May 28, 1926.

1. **INFORMATION:** Assault.   An information charging assault with a deadly weapon, in the language of the statute under which it is drawn (Sec. 3262, R. S. 1919), is sufficient.

2. **CHANGE OF VENUE:** No Affidavit.   No error is committed in denying an application for a change of venue based on the prejudice of the judge, where no affidavits in conformity with the statute (Laws 1921, p. 206; Secs. 3973, 3993, R. S. 1919), are filed in support of such allegations.

3. ———: **Other Counties of Circuit.**   Under the statute (Laws 1921, p. 206), which is directory and not mandatory, where affidavits are

314 Mo.—43.

made by citizens of the county in which the crime is committed, in support of an application for a change of venue, charging that the inhabitants of the county and of the adjoining county in the same judicial circuit are so prejudiced against defendant that he cannot have a fair trial in either county, it is within the discretion of the court to award the change to such other county.

4. **EVIDENCE: Reputation: Never Discussed.** A witness, who is acquainted with another whose reputation for truth and veracity has been attacked, and who states that he does not know what his reputation is generally because he has never heard it discussed or attacked, is qualified to state that such witness's reputation is good.

5. ———: **Cross-Examination of Defendant: Res Gestae.** Where counsel for defendant on direct examination inquired concerning defendant's having drawn a pistol on a bystander who, during an assault, attempted to go to the relief of the person assaulted, it was not error to permit the State on cross-examination to further interrogate defendant upon the same subject. Furthermore, the statute (Sec. 4036, R. S. 1919) was not intended to so crib and cabin counsel for the State as to limit him to a mere categorical reiteration of defendant's direct examination, but he may be cross-examined as to the details of transactions touched upon by him in his examination in chief. And, further, defendant's act in drawing the pistol to ward off the bystander's attempted interference with his striking with an iron bar upon the head of the assaulted person, was a part of the *res gestae*, and so immediately connected with the assault that, had it not been referred to by defendant in his direct examination, it would not have been improper for counsel for the State to question defendant in regard thereto upon cross-examination.

6. **INSTRUCTIONS: Under Different Statutes: Different Punishment.** The information was drawn under Section 3262, which defines an assault with malice aforethought. Proper instructions were given under this statute, as well as under Section 3263, defining an assault with intent to kill or to do great bodily harm, and defendant complains of the instruction given under Section 3263, because, in prescribing the punishment, it omitted the words "or in the county jail not less than six months or by a fine of not less than one hundred dollars." He was convicted under Section 3262, by a verdict which expressly found him "guilty of an assault with intent to kill with malice aforethought" and assessed his punishment at imprisonment for a term of three years. *Held*, that having been convicted under Section 3262, of which the evidence shows him guilty, he has no ground to complain that the quoted words were omitted from the instruction given under Section 3263.

State v. Pool.

7. ———: Argumentative. An instruction telling the jury that they may convict defendant of the crime of assault with intent to kill with malice aforethought under the first instruction, or may convict him of the offense of assault to kill without malice aforethought under the second instruction, or may acquit him of each of said offenses according as they may find the facts to be under the evidence and instructions, is neither argumentative, prejudicial, nor a comment on the evidence.

Corpus Juris-Cyc. References: Criminal Law, 16 C. J., Section 320, p. 212, n. 58; Section 328, p. 217, n. 35, 36; Section 2311, p. 941, n. 62; 17 C. J., Section 3705, p. 348, n. 86. Homicide, 30 C. J., Section 562, p. 318, n. 96. Indictment and Information, 31 C. J., Section 268, p. 714, n. 96. Witnesses, 40 Cyc., p. 2505, n. 1; p. 2506, n. 3, 5; p. 2510, n. 29; p. 2645, n. 27.

Appeal from Stoddard Circuit Court.—*Hon. E. M. Dearing,* Special Judge.

AFFIRMED.

*W. G. Bray* and *Smith & Zimmerman* for appellant.

(1) The Circuit Court of Stoddard County had no jurisdiction over the person and cause of action against appellant, because under the statute he was entitled to trial in some other county than Dunklin and Stoddard. Laws 1921, p. 206; State v. Spivey, 191 Mo. 108; State v. Shipman, 93 Mo. 147. The provisions of this section are mandatory and to require additional affidavits would be to read something into the statute not written there. The affidavits filed with the application were directed against the prejudice of the inhabitants of both counties, Dunklin and Stoddard, and to require ten affidavits to support the application would do violence to the statute and read a provision therein not expressed. (2) In proving the good reputation of P. R. Smith for truth and veracity, the court erred in admitting incompetent and illegal evidence, offered by the State, which should work a reversal of the case. Warlick v. Peterson, 58 Mo. 408; Waddingham v. Hulett, 92 Mo. 528. (3) Again the court permitted counsel for the State to examine appellant about what took place after the difficulty, particul-

larly his drawing a gun to keep people from rushing upon him, which was clearly beyond the range or scope of his direct examination and which was prejudicial to defendant's rights under the law of our State. (4) Instruction 2 assumes that an assault was made upon P. R. Smith and failed to advise the jury as to the proper punishment. It is obvious that if the jury had been advised that it could impose both a fine and jail sentence that it might have assessed such a punishment. (5) Instruction 5 is tantamount to a directed verdict and was highly prejudicial. Furthermore, it was argumentative and served no useful purpose in the case, in the light of the other instructions herein, except to tell the jury the defendant could be convicted in any event. It may be argued that the concluding words "as you may find the facts to be under the evidence and instructions" might reasonably apply to first part of instruction, but no such language followed the direction in the first part. This instruction was wrong and prejudicial to appellant. State v. Swarens, 241 S. W. 934; State v. Adkins, 284 Mo. 688; State v. Edelen, 288 Mo. 172.

*North T. Gentry,* Attorney-General, and *Harry L. Thomas* and *A. B. Lovan,* Special Assistant Attorneys-General, for respondent.

(1) There was no error in not calling in another judge to try the case for the reason that the affidavit for a change of venue from the judge was not supported by the affidavit of two reputable persons as required by the statute. State v. Cavanaugh, 76 Mo. 55; State v. Brownfield, 83 Mo. 451; State v. Neiderer, 94 Mo. 81. (2) The venue was properly changed to Stoddard County for the reason that there were no accompanying affidavits from any residents of Stoddard County. All the affidavits accompanying the affidavits for change of venue were made by citizens of Dunklin County. (3) Evidence that defendant drew a pistol was properly admitted, being an immediate and inseparable incident to the assault and

a part of the *res gestae*. State v. Cruts, 288 Mo. 107. (4) Over the objection of appellant the court permitted the witness to say, "I have never heard his reputation attacked." There was no error in admitting this testimony. State v. Grate, 68 Mo. 27; State v. Brandenburg, 118 Mo. 185; Davis v. Foster, 68 Ind. 241; 10 Cyc. 332; State v. McClellan, 98 Pac. 211; Underhill's Crim. Evidence (3 Ed.) sec. 140. (5) Cross-examination of the defendant is not limited to a mere categorical review. State v. Edelen, 288 Mo. 160; State v. Foley, 247 Mo. 607; State v. Lemon, 263 S. W. 186. (6) Complaint concerning Instruction 2 is that it did not correctly state the punishment to be assessed under the charge lodged against the defendant. The instruction omitted the words "or in the county jail not less than six months or by a fine not less than one hundred dollars." There might possibly be some reason in the point urged if it were not true that the record shows conclusively that the jury found the defendant guilty under Instruction 1. In view of the fact that the jury found the defendant guilty of assault with intent to kill with malice aforethought, Instruction 2 does not apply to the facts as found by the jury, and no prejudice could result to the defendant because of the misquoting of the statute with reference to the punishment in Instruction 2.

WALKER, P. J.—The defendant was charged by information in the Circuit Court of Dunklin County with an assault with intent to kill. Upon his application a change of venue was granted to Stoddard County. A trial to a jury resulted in his conviction and sentence to three years' imprisonment in the penitentiary. From this judgment he appeals.

P. R. Smith, a cotton buyer, who was assaulted, was standing on the street in the town of Senath, near a load of cotton, which he had just examined, when he was approached from the rear by the defendant and struck on the head with an iron bar in the hands of the latter and felled to the ground. A second blow was given to Smith

while he was down, and after kicking him defendant drew a pistol from his pocket and ordered a bystander, who started to Smith's relief, to "stand back." Defendant, just before the assault, had driven up and stopped his car immediately in front of the team hitched to the cotton wagon, leaving the motor running, near where Smith was standing. After the assault he drove rapidly to Kennett and surrendered to the sheriff. Smith was rendered unconscious by the blows. The wounds inflicted were on the back and right side of his head. The first was superficial, as if made by a glancing blow; and the second indicated that it had been produced by a blow from a weapon with a knob or bolt on the end of same. The wound inflicted was deep and ragged, and there was a fracture and depression of the skull for about two inches. The driver of the cotton wagon who witnessed the assault stated, in confirmation of the foregoing, that it was committed by the defendant with an iron steering rod of a Ford car, about two and a half or three feet long. The witness further stated that the defendant approached Smith from the rear, struck him with the iron rod, and after he was down struck him again, kicked him, ran to his car and drove rapidly away. No words were passed between the defendant and Smith, and the only thing said by the former was, when he, with a drawn pistol, ordered a bystander, who attempted to go to Smith's relief, to "stand back." The foregoing is, in the main, the testimony introduced by the State.

The defendant introduced testimony of numerous threats made by Smith against him; that he was a deputy sheriff, and came to where he saw Smith on official business. Recalling the threats he had been told Smith had made, he took an iron pump handle from his car, and as he passed Smith the latter asked him what he intended to do with the club, and he answered, "You have been lying on me;" that after some words Smith raised his left hand in which he held a knife and appeared to strike at him, and that he struck Smith down with the iron bar

and gave the latter a second blow as he was about to rise to his feet.

About two hours after the assault, the defendant, in conversation with a witness named Griffin, said in an excited manner that people had been telling him that Smith was going to send a man to buy whiskey from him, so that he might be sent to the penitentiary; that when he (defendant) heard this he became angry, got into his car, drove to where Smith was and struck him; that he knew it was no use for him to fight Smith fairly; that the latter was too much of a man for him. Smith's open pocket knife was found lying on the ground near where he was assaulted. The witness to whom Smith was talking when the cotton wagon drove up stated that Smith was whittling and had the knife in his hand while he was examining the cotton. There was contradictory testimony as to Smith's reputation for truth and veracity. Witnesses for the defendant were shown to have bad reputations for truth and veracity.

I. The information is drawn under Section 3262, Revised Statutes 1919, and charges an assault with a deadly weapon. It follows the language of the statute and under numerous precedents is not subject to valid objection.

Information.

II. The defendant contends that the trial court erred in its ruling upon the application for a change of venue. No affidavits were filed in support of the allegation as to the judge's prejudice in conformity with either Section 3973, Revised Statutes 1919, as amended, Laws 1921, page 206, or Section 3993, Revised Statutes 1919, and this phase of the contention does not demand further consideration.

Change of Venue.

Dunklin and Stoddard counties constitute the Twenty-second Judicial Circuit. The application for a change of venue, attested by the affidavits of residents of Dunklin County, only, alleged the prejudice of the inhabitants of both counties against the defendant. The court ordered the case transferred to Stoddard County. The de-

fendant contends that it should have been sent to a county outside of the Twenty-second Judicial Circuit. In State v. Smith, 281 S. W. 35, in which it was sought to secure a change of venue to a county outside of the judicial circuit in which the affidavits, in support of the application, were made by citizens of one of the counties in the circuit, we held that without considering the propriety of the action of the court in hearing the evidence of the supporting witnesses, it was clear that, by the terms of the statute, even if proof of prejudice had been offered as to the inhabitants of the other counties of the circuit, a granting of the application for a change of venue to some other judicial circuit was a matter within the discretion of the court. In a later case, State v. Dyer, 314 Mo. 608, 285 S. W. 101, we held the statute (Laws 1921, p. 206) to be directory, as indicated by the word "may" in the last sentence of same, and although the affidavits were made by citizens from each of the counties in the judicial circuit, the court did not err in overruling the application for a change of venue. We regard these cases as declaratory of, not only a correct, but a wholesome construction of this statute. We therefore find no merit in this contention.

III. The defendant contends that error was committed in permitting a witness, in testifying as to the reputation of Smith for truth and veracity, to answer, in response to the inquiry as to his knowledge of Smith's **Reputation.** reputation, that "he did not know what it was generally, because he had never heard it discussed or attacked." The witness had stated, before thus testifying, that he was personally acquainted with Smith. Chief Justice SHERWOOD, in that trenchant English of which he was a master, thus disposes of this contention: "While it is true that the usual formula as to such matters is to inquire if the witness knows the general reputation of the person in question, and what that reputation is (1 Greenl. Ev. 461), yet the hackneyed and

stereotyped mode of answering such inquiry need not always be pursued. Frequently the highest evidence which can be offered in this regard is of that negative character which the court below unwarrantably, as we think, excluded. That reputation may with justice well be called good which no slanderer has ever ventured to even so much as question. A blameless life, oftentimes, though not always, gives origin to such a reputation. But when it can be said of a man by those well acquainted with him, that they never heard his reputation, as to truth and morals, discussed, denied or doubted, it is equivalent to passing upon him the highest encomium. The authorities abundantly establish that the person testifying need not base his means of knowledge on what is 'generally said' of the person whose character is in question, but may base his knowledge of the reputation of such person on evidence of the negative nature above noted''—citing cases. [State v. Grate, 68 Mo. l. c. 27-28.]

The rule thus announced was affirmed in State v. Brandenburg, 118 Mo. 181. The cases cited by appellant in this regard do not support his contention.

IV. It is further contended that error was committed in permitting counsel for the State to examine the appellant as to his having drawn a pistol on a bystander who, during the assault, attempted to go to the relief of Smith. An examination of the transcript of the testimony discloses that this inquiry was made by counsel for the defendant on the latter's direct examination. It was therefore permissible for the prosecuting attorney upon cross-examination to further interrogate the defendant on this subject. As we held in State v. Culpepper, 293 Mo. 257, the defendant in his examination in chief ''having opened the door for the cross-examination he now urges as error will not be heard to complain.'' Moreover, the cross-examination in this case was not error within the meaning of the statute (Sec. 4036, R. S. 1919). This section was not intended to so ''crib and cabin'' the counsel for the

*Cross-Examination of Defendant.*

State as to limit him, on cross-examination to a mere categorical reiteration of the examination in chief. In State v. Pfeifer, 267 Mo. 23; State v. Foley, 247 Mo. l. c. 638, and State v. Lemon, 263 S. W. 186, we held that the defendant might be cross-examined as to the details of transactions touched upon in his examination in chief. Not only was the matter here objected to "touched upon," but there was direct testimony by the defendant in regard to the same. Further than this, the act of drawing the pistol immediately following the commission of the assault, being a part of the *res gestae,* was so immediately connected with it, that had it not been referred to by the defendant on direct examination it was not improper—upon counsel for the State being apprised of same—to question the defendant in regard thereto upon cross-examination. In view of the record, however, this conclusion becomes immaterial in the determination of this contention.

IV. This information was drawn upon Section 3262, Revised Statutes 1919, which defines an assault with malice aforethought. Proper instructions were given under this statute, as well as under **Different Punishment.** Section 3263, defining an assault with intent to kill or to do great bodily harm. The defendant was convicted under Section 3262. He complains, however, of an instruction under Section 3263. This instruction, in prescribing the punishment, omits therefrom the words "or in a county jail not less than six months or by a fine of not less than one hundred dollars." In other respects the instructions conform to the statute. The defendant having been convicted under Section 3262, of which the evidence showed him to be guilty, has no ground of complaint on account of the omission in the instruction under Section 3263. The language of the verdict is as follows: "We, the jury, find the defendant guilty of assault with intent to kill with malice aforethought as charged in the information and assess his punishment at imprisonment in the penitentiary for

the term of three years.'' This verdict clearly indicates that the jury comprehended the law as given to them by the court, and in weighing the evidence, as they were authorized to do, they found the defendant guilty of an assault with malice aforethought. There is no just ground of complaint therefore by reason of the omission from an instruction under a different section of the statute for a violation of which the defendant was not found guilty.

V. The appellant also complains of Instruction 5, in that it is argumentative and prejudicial. This instruction tells the jury that they may convict the defendant of the crime of assault with intent to kill with malice afore-thought under the first instruction, or may

*Instruction.*

convict him of the offense of assault to kill without malice aforethought under the second instruction, or they may acquit him of each of said offenses according as they may find the facts to be under the evidence and instructions. There is, therefore, no comment on the evidence in this instruction. The authorities cited by appellant under this assignment of error are cases where the instructions given by the court included comments on the evidence and for that reason they were held to be bad. The authorities cited do not in any way apply to this instruction.

Aside from the defendant's evidence there was no defense interposed to the assault. The witnesses for the State uniformly testified to a state of facts which authorizes the classification of the offense as not only ruthless, but brutal. No error having been committed authorizing a reversal, the judgment of the trial court is affirmed. All concur.