**STATE of Missouri, Respondent,**

v.

**Jessie Theodore COOK, Appellant.**

No. 52924.

Supreme Court of Missouri, Division No. 2.

June 10, 1968.

Norman H. Anderson, Atty. Gen., Jefferson City, Brunson Hollingsworth, Sp. Asst. Atty. Gen., Hillsboro, for respondent.

William H. Wendt, Springfield, for appellant.

PRITCHARD, Commissioner.

Appellant claims that the state's verdict-directing instruction (No. 7) ignored his defense of self-defense in this case of conviction of Assault with Intent to Kill with Malice Aforethought. Upon verdict of the jury and a finding that appellant was a second offender within § 556.280, RSMo 1959, V.A.M.S., a sentence of 20 years' imprisonment in the Department of Corrections was imposed. Other errors are assigned as hereinafter discussed, and by Point II appellant contends that his motion for judgment of acquittal should have been sustained because the state's evidence was not sufficient to sustain the charge against him (§ 559.180, RSMo 1959, V.A.M.S.).

The prosecuting witness is Olen Neal Lafferty. In the early morning hours of a Sunday, December 11, 1966, appellant and Olen were involved in a fight at the Little Reno Club in Springfield, Missouri. That place served 3.2% beer and provided dancing for patrons. It was then fairly crowded. Appellant had been in a storeroom in the building and was returning to the table and dance area. Joe McCormack heard appellant make a remark which he thought was directed at him. Olen was then returning to his table from the dance floor, and he understood the remark, coupled with a vile name, to be directed toward him. Olen reached over the shoulder of McCormack, struck appellant and knocked him to the floor, either with his fist, a bottle or other weapon. Several persons then grabbed Olen about his body and arms and restrained him. Appellant, being on the floor in close proximity to Olen, fired a shot with a two-shot .22 caliber Derringer Magnum which was in appellant's possession inside his coat. This shot struck Olen in his right shoulder at the armpit. There were no powder burns found in this area. A second shot was fired striking Olen in the left abdominal area about which were found powder burns. As a result of the wounds Olen was hospitalized for more than seven weeks.

Olen's testimony was that he arrived at the Reno Club shortly after midnight with Judy Abney. He first met appellant upon leaving the dance floor. Appellant and McCormack were standing between the dance floor and where Olen had been sitting. Appellant called Olen a vile name where-

upon Olen struck him with his fist, denying that he had any kind of implement in his hand. Appellant went down and others grabbed Olen when he was two feet from appellant. Olen was then shot in the shoulder and he saw appellant on the floor with a gun in his hand. In two to five seconds Olen was shot again in the side, after which he saw appellant in a position of getting up from the floor, about halfway up. Appellant had previously threatened to kill Olen, who was not on the night of the assault trying to find appellant. McCormack was between appellant and Olen when the latter struck appellant "fairly hard," enough to knock appellant backward off his feet, and was standing over him at the time of the first shot. Recently there had been a lot of hard feelings between Olen and appellant, but Olen denied having made threats toward appellant. Appellant's threats toward Olen and the hard feelings between them arose out of their mutual criminal activity, Olen having gotten his own shoplifting coat, which angered appellant.

Joe McCormack testified that prior to the shooting he talked to appellant in the store room of the Little Reno Club. While they were in the storeroom, appellant showed McCormack a bottle and a two-shot Derringer Magnum pistol which appellant had in a shoplifter's coat he was wearing. They then went back into the club with appellant following McCormack. Appellant shouted something and some person reached over McCormack's shoulder and knocked appellant down. McCormack thought appellant was talking to him and turned around to see what he said when appellant was struck. Olen was the assailant upon appellant, who was on the floor when a shot was fired, at which time someone was holding Olen. McCormack denied seeing any weapon in Olen's hand. A second shot was fired when appellant was getting up· and when Olen was standing over him. He testified that "they were holding on to Olen. He got loose, then the second shot was fired." Appellant and Olen were "almost against each other" when the second shot was fired.

Judy Abney heard the shots, a few seconds between them, and ran toward the location. She saw appellant getting up on his feet and falling backward, "kind of slumped over." She denied seeing any injury to appellant's head or a weapon in Olen's hand.

Wallace "Wad" Stillings saw Olen hit appellant, but before that he did not hear appellant say anything. The two were a foot or two apart and appellant was coming up off the·floor when Stillings got there. Just a second or two elapsed between the first and second shot. He saw no injury to appellant's head. Stillings had told Olen of appellant's presence in the club, and Olen said that "he could handle a punk like that with his hand." He saw Olen hit appellant over McCormack's shoulder and saw appellant fall.

Appellant's mother, Myrtle Stapp, testified that Olen had made numerous threats to kill appellant, "as high as five calls during the night," within the last year and a half. One threat was received a week before trial. She told appellant of each call. She picked up appellant after the incident at the club and described him as "all busted open * * * just as bloody as he could be." His eye was black and bloodshot, and his shirt was bloody.

Joyce Blake testified that Olen struck appellant in the head with a bottle and appellant fell to the floor. Joyce was 15 to 20 feet away from the altercation when it occurred.

Glen Medlock testified that there was a scuffle, somebody threw something or somebody was hit. Shortly after that there were two explosions.

Luther Gaba testified that Olen had said to a Bud Perryman, two to three weeks before the shooting, that the last thing he was going to do was to kill appellant. James Marvin Fields testified also to threats made by Olen with reference to appellant, and

that he saw Olen strike appellant with an object, a gun or knife, in his hand.

Stella Greason, whose husband was in Texas, was alone in the Little Reno Club the night of the shooting, having never been there before. She ordered a coke, paid for it, but before she could sip from it Olen grabbed it and reached around a man's shoulder and knocked a man down. She heard a shot as she went out the door in a hasty exit as she did not want to be around the law. Glen Medlock heard several crashes of glass when a scuffle occurred and then, shortly, two explosions. He left immediately. Robert Wesley Moore also heard a glass break like a bottle, and left when he heard the shots.

The foregoing facts bear upon the actual shooting and the events immediately preceding. The transcript is replete in its recital of testimony concerning the past criminal records and misconduct of certain witnesses both for the prosecution and the defense. It would serve no purpose to set forth that testimony here as it goes only to the credibility of witnesses shown to have such records.

Appellant's Point II argument on the submissibility of the state's case against him is, "the prosecuting witness was the aggressor, having struck the first blow without provocation and knocking Appellant to the floor thereby placing Appellant in a position of having to defend himself and as a matter of law Appellant's defense of self-defense became perfect and the State thereafter failed to make a submissible case."

No case is cited by appellant holding that as a matter of law he is not guilty of the offense of assault with intent to kill with malice aforethought where the victim is the first aggressor either with fists or with a bottle used as a weapon (as the jury might find under the evidence). In 6 C.J.S. Assault and Battery § 127b, p. 998, it is said, "Whether the circumstances are such that accused was justified, and therefore whether he was acting in self-defense, in defense of others, or in defense of his property is ordinarily a question of fact for the jury. It is also for the jury to say * * * whether the circumstances would have excited the fears of a reasonable man; * * * whether the amount of force used was suitable and moderate, or excessive in any particular case, * * * or when used in defense of self, * * *." In the analogous situation in the homicide case of State v. Singleton, Mo., 77 S.W.2d 80, 83 [3, 4], it was said, "Taking human life in self-defense is an affirmative, intentional act. (Citing cases.) In order to justify that extreme measure, where the accused has used a deadly weapon upon a vital part of the body of the deceased, two things are necessary, viz: He must have believed that such act was necessary, and he must have had reasonable grounds for such belief. (Citing cases.) It is not sufficient that he may have so believed. It is further necessary that he should have had reasonable grounds for such belief, and whether or not he had such reasonable grounds is generally a question for the jury. That is too well settled in this state to require citation of authorities." See also State v. Swindell, 357 Mo. 1090, 212 S.W.2d 415, 417 [1–3]. And further in 6 C.J.S. Assault and Battery, § 92(2) and (3) p. 946, it is said, "The one assaulted is entitled to use such force as is reasonably necessary to repel an assault, and the test is whether the force used would have been deemed necessary by a reasonable person in a similar situation." "In view of the rule set out in the previous subsection that a person is not justified in using excessive force in repelling an assault, the use of deadly weapons to repel a simple assault is not ordinarily justified, but it may be where the use of such weapon is necessary to prevent the threatened injury, * * *." In the old case of State v. Ferguson, 26 Mo. App. 8, 9, the court said, "The defendant's evidence did not differ very much from that of the state, except that it tended to show that Huggins struck the defendant with a chair before the defendant shot him the first time. Upon the hypothesis of the defendant's evidence, we could not say that the verdict of the jury is unwarranted;

for we are not prepared to say, as matter of law, that a man is entitled to defend himself, with a pistol, against another man, who, in a quarrel, strikes him with a chair."

■ Under the facts here, Olen being the aggressor in the first instance, the conflict of evidence as to whether Olen was being held and still advancing immediately after he struck appellant who went down, considering whether Olen's striking appellant amounted to an aggravated assault with his fists (or with a bottle) within State v. Selle, Mo., 367 S.W.2d 522, 527, it was for the jury to determine whether or not appellant had reasonable grounds to believe that Olen was within close enough proximity to do appellant further harm, so as to justify repelling the attack, if so, by firing the Derringer pistol into Olen. The state made a submissible case against appellant under the evidence, and Point II is overruled.

As appellant points out, there are many cases holding it to be reversible error for an instruction for the state to ignore a defense. Some of the felonious assault cases are: State v. Helton, 234 Mo. 559, 137 S.W. 987; State v. Stubblefield, 239 Mo. 526, 144 S.W. 404; State v. Jones, 309 Mo. 50, 273 S.W. 730. In the Helton case (and others) the reason for the holding is stated: "The essential infirmity in the instruction is that it conditions the guilt of the appellant upon the bare 'intent to kill or do some great bodily harm' in the act of shooting, without requiring any further finding as to whether that 'intent' was in furtherance of a 'wrongful act willfully done,' or of a design to exercise the right of self-defense belonging to every man. * * * [The instruction] was so framed as to cover the entire case and direct a finding of guilt on the part of the appellant, provided he entertained any intent 'to kill or do great bodily harm,' regardless of the fact that such intent would have been entirely justifiable if the jury believed he was acting solely in self-defense." (137 S.W. loc. cit. 989.)

■ Instruction No. 7 submits to the jury for a finding that appellant "did then and there wilfully, unlawfully, and feloniously, on purpose and of his malice aforethought, make an assault in and upon another, to wit: Olen Neal Lafferty, * * *." It has long been held that words of this nature used in an instruction are sufficient to negative the defense of self-defense in felonious assault cases brought under § 559.180, supra. State v. Wicker, Mo., 222 S.W. 1014, 1016 [5, 6]; State v. Glass, 318 Mo. 611, 300 S.W. 691, 693 [7]; and see State v. Winn, Mo., 324 S.W.2d 637, 641, which reversed a conviction and remanded the case for error in failing to negative the defense of self-defense, or to reference it, in an instruction upon the *lesser* degree of assault without malice aforethought (under which appellant there was convicted) by use of the words "without just cause or provocation" or similar language in accordance with State v. Wicker, supra. As to the instruction upon the *greater* degree of the offense the court said, loc. cit. 324 S.W.2d 642 [3], that the words "on purpose and of malice aforethought" required the jury to find facts which would definitely negative self-defense, and [the instruction] was not erroneous. For these reasons, Instruction No. 7 here is not erroneous.

■ Appellant attacks also Instruction No. 8, given on the lesser degree of the offense under § 559.190, RSMo 1959, V.A. M.S. Undoubtedly this instruction is erroneous under State v. Winn, supra, as it ignores the defense of self-defense, contains no qualifying words or phrases, and does not reference any other instruction. However, appellant was not convicted under this instruction and statute. He may therefore not complain. See State v. Pool, 314 Mo. 673, 285 S.W. 726, 728 [8], where this precise situation was ruled; compare also State v. Mayberry, Mo., 272 S.W.2d 236, 243 [21]; State v. Smith, 80 Mo. 516, 519; and State v. Elliott, 16 Mo.App. 552. The error in Instruction No. 8 was cured by the verdict finding that appellant was not acting in self-defense under Instruction No. 7. Compare State v. Crow, Mo., 388

S.W.2d 817, 820 [7, 8]. Appellant's Point I, attacking Instructions Nos. 7 and 8, is overruled.

By Point III, appellant contends that Instruction No. 11, upon the subject of self-defense, is prejudicially erroneous because it does not instruct that appellant "was not required to nicely gauge the amount of force necessary to repel the attack upon him and the jury therefore might have been confused and misled into believing that the use of a deadly weapon was an inappropriate response to the assault by Lafferty with his fists and that therefore Appellant was guilty under the main verdict-directing instructions, the jury thereby completely disregarding the instruction on self-defense." Cited are the cases of State v. Hopkins, 278 Mo. 388, 213 S.W. 126, and State v. Creed, 299 Mo. 307, 252 S.W. 678.

■ Instruction No. 11 tells the jury that one has the right to defend one's self under certain circumstances to prevent an apprehended injury to himself by another; that if appellant had reasonable cause to believe and did believe that Olen was about to take his life or do him some great bodily injury or personal injury and it was necessary to make the assault upon Olen to protect himself he should be acquitted on the grounds of self-defense. The jury was told that the matter of reasonable grounds to believe that danger existed should be determined from all the evidence in the case. Further, the instruction read, "Although the defendant may have really believed himself to be in danger, yet he cannot be acquitted on the grounds of self-defense unless it further appears from the evidence that he had reasonable cause for such belief. On the other hand, even if no real danger existed, yet if the defendant had reasonable cause to believe and did believe that it existed, he would be justified in acting upon such belief." Conversely, the jury was instructed that if appellant made the assault unnecesarily when he did not have reasonable cause to believe that Olen was about to kill him, or do him some great bodily harm or personal injury, then there was no self-defense in the case. In State v. Robinson, 353 Mo. 934, 185 S.W.2d 636, 642, both the Hopkins and Creed cases were distinguished upon the ground that both contained the condemned instruction that "no one is justified in using more force than is necessary to get rid of an assailant." With reference to the Creed case, it was further remarked that there was a real question of whether it was necessary for defendants to go to the excessive length of shooting the police officer who assaulted them with a club. In any event, Instruction No. 11 fairly submits the elements of self-defense in accordance with the Robinson case, and in this case, as there, there was no need for any cautionary statement about the amount of force necessary to repel an attack. See also State v. Littlejohn, 356 Mo. 1052, 204 S.W.2d 750, 752 [6]. Point III is overruled.

■ Appellant contends that the court erred in not permitting him to prove that the state had attempted to intimidate one of his witnesses [Joyce Blake (Smetz)] by threatening her with a possible perjury charge prior to her testimony. The state's objection to the question put to Mrs. Blake as to whether she had a conversation with the prosecuting attorney just a few minutes before her direct testimony. Counsel then made an offer of proof to show that the prosecuting attorney had asked Mrs. Blake if she was aware of the penalties of perjury and told her he had reliable information that she was not at the Little Reno Club when the shooting took place and that she had better think twice before she testified. Although appellant concludes in his point that overruling of his offer of proof deprived him of a fair trial, he points to no resulting prejudice. While it would be highly improper for counsel to threaten a witness so as to affect the testimony to be given, there is no showing that Mrs. Blake's testimony was altered by the alleged threat. She testified fa-

vorably to appellant—that she was present in the Little Reno Club and saw Olen strike appellant in the head with a bottle. Point IV, raising this issue, is overruled.

■ Plain error affecting appellant's substantial rights is urged in Point V, the matter not being preserved in his motion for new trial. He says the court erred in failing to instruct the jury that communicated threats might be considered by the jury in explaining Olen's conduct as to whether he was the aggressor, "for the reason that this feature was at issue in the evidence and is an essential element of the defense of self-defense." In his cited case of State v. Finn, Mo., 243 S.W.2d 67, 73 [16], the court held that it was error to refuse to instruct on threats where such an instruction *was requested*. However, the court did point out that the defendant could not complain where he failed to request the instruction, citing State v. Fletcher, Mo., 190 S.W. 317, 323 [19, 20]. Appellant did not request a "threats" instruction. There is no plain error, and Point V is overruled.

Complied with are matters specified for review under Supreme Court Rule 28.02, V.A.M.R., the parties having been heard on appellant's motion for new trial.

The judgment is affirmed.

BARRETT, C., concurs.

STOCKARD, C., concurs in result.

PER CURIAM.

The foregoing opinion by PRITCHARD, C., is adopted as the opinion of the Court.

FINCH, P. J., concurs in separate concurring opinion filed.

DONNELLY and EAGER, JJ., concur in result and concur in separate concurring opinion of FINCH, P. J.

CONCURRING OPINION

FINCH, Presiding Judge.

I concur in the result reached in the principal opinion and in all that is said therein except a portion of the discussion with reference to Instruction No. 8.

I agree with the view expressed in the principal opinion that Instruction No. 8 is erroneous in ignoring self-defense and that such error was cured by the verdict finding under Instruction No. 7 that defendant was not acting in self-defense. What I do not agree with is that the defendant may not complain of the instruction by reason of the fact that he was convicted of a greater offense under another instruction and statute.

The language in the principal opinion holding that defendant may not complain for this reason seems to me to conflict with our recent decision in State v. Mathis, 427 S.W.2d 450, decided May 13, 1968. In Mathis, defendant was charged, as here, under § 559.180, RSMo 1959, V.A.M.S. The court submitted, under Instruction No. 1, the issue of whether the defendant was guilty of felonious assault with malice aforethought with intent to do great bodily harm. In addition, the court instructed the jury in Instruction No. 3 with respect to assault under § 559.190. We found that Instruction No. 3 was erroneous and we reversed and remanded for new trial on that account, notwithstanding the fact that the defendant actually was convicted on the basis of Instruction No. 1 submitting the offense under § 559.180.

On the basis of Mathis, I am of the opinion that the statement in the principal opinion that the defendant may not complain of Instruction No. 8 since he was not convicted under that instruction nor under § 559.190, is erroneous, and I do not concur therein.

The principal opinion cites and relies on State v. Pool, 314 Mo. 673, 285 S.W. 726, State v. Mayberry, Mo., 272 S.W.2d 236,

State v. Smith, 80 Mo. 516, and State v. Elliott, 16 Mo.App. 552. There is language in some of these cases which would seem to support the pronouncement made in the principal opinion. I think perhaps that the two later cases cited above may be distinguished on the facts. The instruction in Pool merely left out a part of the range of punishment applicable if defendant was convicted of the lesser offense. It properly submitted the issue as to the offense. In Mayberry the court held basically that there was no evidence to support any instruction for manslaughter and hence a manslaughter instruction which was given was not prejudicial even though erroneous.

In any event, to the extent, if any, that any of these earlier cases, viz., Pool, Mayberry, Smith and Elliott, are in conflict with the ruling announced in Mathis, I would hold them to have been overruled by Mathis to the extent of the inconsistency.