STATE of Missouri, Respondent,

v.

Michael HAMMOND, Appellant.

No. 60086.

Supreme Court of Missouri,
En Banc.

Sept. 12, 1978.

Lee M. Nation, Asst. Public Defender, Kansas City, for appellant.

Robert Frager, Asst. Pros. Atty., Kansas City, for respondent.

RENDLEN, Judge.

This cause was transferred by the Kansas City District, Missouri Court of Appeals after opinion, that we might examine the validity of Missouri Approved Instruction—Criminal 6.26 (MAI–CR 6.26). Portions of the Court of Appeals' opinion are utilized without quotation marks.

Defendant Michael Hammond was charged with assault with intent to do great bodily harm under § 559.190, RSMo 1969, but was convicted of the lesser included offense of common assault, § 559.220, RSMo 1969, with punishment fixed by the jury at thirty days in the county jail. On appeal defendant attacks (1) sufficiency of the evidence and (2) adequacy of the main verdict directing instruction (MAI–CR 6.26, common assault) which defendant contends erroneously permits conviction without a finding as to the constituent elements of common assault.

I.

The evidence taken most favorably to the verdict would permit the jury to find that defendant intentionally offered to inflict bodily injury with a knife upon Lavon L. Jones and is sufficient to sustain the conviction for common assault. We discuss the facts in some detail, not only to demonstrate the sufficiency of the evidence but to make clear the efficacy of the trial court's instructions to the jury.

It was undisputed that defendant, with a woman companion, was seen by three Safeway employees lingering in the vicinity of the supermarket meat counter of the Safeway Store in Independence, Missouri. The meat market manager, Jim Griffin, noticed the antics of the woman who was repeatedly picking up and putting down packages of expensive steaks and who then placed them in a cart. The manager directed E. D. Hewitt, meat cutter at the store, to keep defendant and his female companion under

observation. As they turned down the aisle toward the front of the store, defendant and the woman stuffed the merchandise into her purse. Hewitt, who had seen this, beckoned Griffin to the front of the store where they told Lavon Jones, another store employee, that they suspected the couple was stealing steaks. Defendant and his companion then passed through the checkout stand without a gesture of payment and thence from the store, the woman first followed by defendant.

The manager attempted to follow but defendant purposely blocked the doorway permitting the woman, who was then running from the store, to elude capture. In order to get past Hammond the store employees pushed him through the door but his tactics allowed the woman's escape. Griffin pursued her as she ran across the parking lot tossing the steaks from her purse but her lead was such that he abandoned the chase, retrieved the steaks and returned to the store. Meantime Hewitt and Jones attempted to restrain defendant near the store. Hewitt took defendant by the arm asking him to return to the store but he jerked his arm away with the obscenity, "Get your f____g hands off me." He turned to face Hewitt stating, "Stay away from me, man" and at that moment pulled a knife from his trouser pocket, "popped [open] the blade" and belligerently stated to the two men, "Leave me alone." Jones, who was then only three or four feet from the defendant, warned Hewitt of the knife and both store employees backed away from him. The defendant moved off and the two followed, again asking him to return to the store. Defendant, brandished the knife with its open three inch blade by holding it near the right side at his waist, repeated his warnings and the employees continued to hold back from him. Jones explained his apprehension of defendant this way: "So again we just held back, you know, we wouldn't—I respected the knife. I wasn't going to . . . [go] up there and take it out of his hand . . . ." Hewitt testified it was when defendant

first jerked his arm away and turned to address him in bellicose tones that he noticed the knife.

The defendant again moved off and the two employees followed, staying out of reach as he continued to display the knife. When defendant was about to leave the parking lot area, they asked once more that he return to the store but his knife kept them at bay. Immediately after defendant left the lot Jones reported the incident to the police.

■ Within the hour defendant was arrested and a search incident to the arrest disclosed a pocket knife on his person which was received at trial as evidence against him. This evidence supports the conviction for common assault and defendant's first contention is without merit.

## II.

We turn now to the question of whether challenged instruction No. 6 is a correct submission of the crime of common assault. Section 559.180 defines assault with intent to kill as:

> Every person who shall on purpose and of malice aforethought . . . *assault* . . . another with a deadly weapon . . . with intent to kill, maim, ravish or rob . . . shall be punished by imprisonment in the penitentiary not less than two years. . . . (Emphasis added.)

Section 559.190, implicitly referring to § 559.180, defines felonious assault without malice aforethought as:

> Every person who shall be convicted of an *assault* with intent to kill, or to do great bodily harm, or to commit any . . felony, the punishment for which assault is not hereinbefore prescribed, shall be punished by imprisonment in the penitentiary . . . or in the county jail . . . . (Emphasis added.)[1]

Section 559.220, "common assault" provides:

> Any person who shall *assault* . . . another, under such circumstances as not

1. The related crimes of mayhem, proscribed by § 559.200 and § 559.210 are not discussed here because they do not employ the term assault when describing the crimes herein.

to constitute any other offense herein defined, shall, upon conviction, be punished by a fine . . . or imprisonment in the county jail . . . . (Emphasis added.)

Clearly the latter section defines common assault as a residual offense and misdemeanor, lesser to and included within the felonies defined in the preceding assault sections of the statute. Although common assault differs from the graver assaults listed above which involve specific intent to kill or to do bodily harm, each requires that the general *intent to injure* must be proved and each includes the term "assault" as a substantive act proscribed.

■■ Ordinarily in a prosecution for assault it is sufficient if the indictment or information follows the language of the statute when describing the offense charged. *State v. Pool*, 314 Mo. 673, 285 S.W. 726, 727 (1926). This is true in prosecutions for felonies as well as misdemeanors. *State v. Foster*, 281 Mo. 618, 220 S.W. 958 (1920).[2] Complementing the practice of couching an indictment or information in statutory language, it is generally sufficient to frame an instruction to the jury in the same manner. As stated by this court in *State v. Jones*, 365 S.W.2d 508, 515 (Mo. 1963):

[i]t has been repeatedly held that a verdict directing instruction, which is not erroneous for some other reason, meets the minimum requirements when in words and effect it follows the language of the statute . . . . (Citations omitted.)

This principle found application in *Rimerman v. United States*, 374 F.2d 251 (8th Cir.) *cert. denied* 387 U.S. 931, 87 S.Ct. 2053, 18 L.Ed.2d 992 (1967), where the defendant, convicted of possessing and concealing and of transferring and delivering counterfeit bills, assigned as error the court's failure to instruct the jury as to "essential elements of the offense as charged." He argued that use of statutory words constituting essential elements of the offense rendered the instruction defective because it did not define the operative words of the statute. Affirming the conviction the court stated, 374 F.2d at 254:

It was entirely proper for the court to utilize the language of the statute in charging the jury. Speaking for this court in *Williams v. United States*, 328 F.2d 256, 262 (8th Cir. 1964), Chief Judge Johnsen stated: 'A court may and generally should, where the law governing a case is expressed in a statute, employ the language of the statute in its instructions.'

In *Guon v. United States*, 285 F.2d 140, 142 (8th Cir. 1960), the court put it this way:

Guon's criticism of the trial court's instruction is without merit. Stated briefly, the contention is that the trial court was required, regardless of any request, to define 'aiding and abetting' and to explain what is meant by the words 'directly or indirectly' as used in the charge. We cannot agree. 'Once the judge has made an accurate and correct charge, the extent of its amplification must rest largely in his discretion.' (Citation omitted.) Frequently, to attempt to explain understandable language is merely to confuse. If the instructions given cover the case and are correct, that is enough. (Citations omitted.)

In the case at bar instruction No. 5 submitted felonious assault with intent to do great bodily harm without malice aforethought (MAI–CR 6.24) under § 559.190, RSMo 1969. That was followed by the challenged instruction No. 6 (MAI–CR 6.26 under § 559.220) which in pertinent part is as follows:

If you do not find the defendant guilty of assault with intent to do great bodily harm without malice aforethought, submitted to you in Instruction No. 5, you must consider whether he is guilty of common assault.

If you *find and believe from the evidence* beyond a reasonable doubt:

---

2. The information charged defendant, in the statutory language, made an assault upon one Lavon L. Jones with a knife.

First, that on or about June 10, 1975, in the County of Jackson, State of Missouri, the defendant *assaulted* Lavon L. Jones *by offering to inflict an injury with a knife*, and

Second, that the defendant *did so intentionally*, then you will find the defendant guilty of common assault. (Emphasis ours.)

This submission comports with the mandate of Rule 20.02(a) that "verdict directing MAI–CR instructions in the 6.00 to 14.00 Series, inclusive, shall be given where applicable even though no request therefor has been made." Rule 20 was promulgated when the value and benefits derived from the adoption of approved instructions for use in civil cases in 1964 became apparent. In cases where an approved instruction must be modified, provision for such action is found in Rule 20.02(d) which requires:

. . . the modified form . . . shall be simple, brief, impartial and free from argument. It shall not submit detailed evidentiary facts. All instructions, where possible, shall follow the format of MAI–CR instructions, including the skeleton forms therein.

■ The instruction here followed the form of MAI–CR 6.26 and employed the language of the statute. We may assume the jury had average intelligence and comprehended the ordinary statutory language of the instruction by which the manner of the common assault was described by the clear, simple statement that the crime occurred by an intentional offer to inflict injury with a knife which was fully supported by the evidence and which defendant did not refute in any particular. As noted above, the prescribed format requires that instructions be simple, brief, impartial and free from argument. Experience has demonstrated the wisdom of this concise format in which only the essential language of the statute is employed to define the crime. Long before the adoption of MAI–CR this concept was accepted and approved in *State v. Fine*, 324 Mo. 194, 23 S.W.2d 7 (Mo.1929), a case involving felonious assault in which an instruction utilized the *statuto-*

*ry language* when submitting the issue of assault with intent to kill with malice aforethought. There the instruction directed a guilty verdict if the jury found that defendant "did make an *assault* and . . . on purpose and of his malice aforethought, feloniously assault him . . . with a certain rifle . . . (etc.)" (Emphasis added.) Similarly, the St. Louis Court of Appeals in the early case of *State v. Lewellyn*, 93 Mo.App. 469, 67 S.W. 677 (1902) approved an indictment for common assault charging that defendant "did . . . intentionally assault . . . [the victim] by . . . pointing a revolver at . . [the victim] . . . in a rude and threatening manner . . ." and ruled that a proffered instruction requiring acquittal unless the jury found that "defendant intended to shoot the prosecuting witness or do him bodily harm . . ." was properly refused. We hold that use of the term "*assault*" in connection with the specific act of "*offering to inflict an injury with a knife*" without further definition was neither confusing nor obscure in meaning and adequately submitted the charge.

Defendant argues that the term assault should have been explained or defined by adding to the instruction that the jury must make the following findings:

*First* —"That there was a hostile demonstration of unlawful force . . . ." Contrary to defendant's contention, this essential element of the crime was adequately submitted by the language "offering to inflict an injury with a knife."

*Second* —"That the act was done in a malevolent and reckless manner." This suggestion ignores the fact that the instructions required the jury to find the defendant acted "intentionally", a higher burden of proof than that which defendant suggested was required. See *State v. Lewellyn*, 67 S.W. at 678.

*Third* —"That there was the necessary proximity between the appellant and the victim to allow the appellant the present ability to effect the attack." Such language would submit in slightly different form the concept that defendant *had the*

*apparent present ability* to effectuate the offer to inflict injury with the knife. The finding of "offer" to use a knife to injure, carries with it the prospect of danger and ability to injure. Stated otherwise, the jury concluded that under the circumstances defendant's use of the knife constituted an offer to injure and this concept broadly includes an apparent present ability to effectuate the "offer." The modification suggested by defendant was a matter for argument to the jury and was not a necessary part of the instruction. This contention is denied.

*Fourth* —"The victim was put in reasonable apprehension of receiving an immediate battery." This contention too, is not well taken. The instruction required the finding of an "assault" with a "knife" by an offer to inflict an injury with such knife. While defendant might argue to the jury, as we heard in the oral argument here, that the victim was beyond arms length and thus defendant was unable to carry out the "offer", this was a matter for argument and whether the victim was put in apprehension and held back from the range of the knife because of that "reasonable apprehension" need not be added to the instruction. The words "offering to inflict injury" and "assaulted" were adequate to submit the charge. While it might be contended the term "assault" in cases presenting different factual situations might require further definition or amplifications of terms, such was not required in this case. We do not believe the jury was misled or that the essential elements of the crime were missing from the charge. This time tested and judicially approved format need not be redone as defendant contends.

The rationale of *State v. Abram,* 537 S.W.2d 408, 411 (Mo. banc 1976) wherein the possibility of a definition instruction of the terms "intends" and "intentionally" in a second degree murder instruction was discussed, is appropriate here. In *Abram* the court stated,

> It is quite clear that had the defendant requested an instruction defining 'intends', the trial court would not have erred in refusing to give it, as such refusal would have been in accordance with

the concept of MAI–CR and the rulings in earlier cases. The words 'intends' or 'intentionally' are very ordinary terms and admit of no confusion with respect to their meaning. When further definition of such words is undertaken, it will result in a myriad of instructions formulated by various lawyers or judges according to their thoughts at the moment and will serve to confuse rather than clarify. Some will define a term negatively— what it does not mean, and others affirmatively—what it does mean. This is to be avoided. If experience indicates that it would be helpful for particular words or terms to be defined, lawyers and judges may, and are encouraged to suggest such changes. See MAI–CR, p. xx. Unless and until such changes are made and approved, instructions such as instruction 11 in this case should not be given.

For the reasons discussed herein, the judgment is affirmed.

MORGAN, C. J., and BARDGETT, DONNELLY and SEILER, JJ., and NORWIN D. HOUSER, Special Judge, concur.

FINCH, J., not sitting.

SIMEONE, J., not participating because not a member of the Court when cause was submitted.